2016 IL App (1st) 151087
No. 1-15-1087
Opinion filed March 31, 2016

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| A.M. REALTY WESTERN L.L.C., | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2013 L 5905 |
| | ) | |
| MSMC REALTY, L.L.C., | ) | The Honorable |
| | ) | John C. Griffin, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes concurred in the judgment and opinion.
Justice Lampkin specially concurred, with opinion.

**OPINION**

¶ 1        Plaintiff A.M. Realty Western L.L.C. sued a former tenant, defendant

MSMC Realty, L.L.C., to collect monthly payments that the former tenant had

agreed to pay, in addition to rent, for certain building improvements.

¶ 2      This case was previously before us on appeal, when we considered the trial court's dismissal for lack of standing. Defendant had moved to dismiss on the ground that plaintiff lacked standing to collect under the prior lease because plaintiff had since sold the building. On November 17, 2011, the trial court granted defendant's motion and dismissed the complaint with prejudice. On November 30, 2012, we reversed and remanded for further proceedings on the merits. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2012 IL App (1st) 121183, ¶ 52. Those further proceedings were to include a determination by the trial court whether plaintiff had fully performed its HVAC obligations under the lease. *Infra* ¶ 41.

¶ 3      Pursuant to our prior opinion, proceedings continued and, on December 19, 2014, the trial court entered summary judgment in favor of defendant. It is this order which is now before us on appeal. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 4                  BACKGROUND

¶ 5                  I. Complaint and Lease

¶ 6      On August 10, 2010, plaintiff filed a verified complaint, in which it alleged that SSM Regional Health Services (SSM), defendant's predecessor in interest, had signed a store lease on January 12, 2004, in which SSM agreed to rent commercial space from plaintiff.

¶ 7 The lease was attached to the complaint as "Exhibit A," and the lease stated that it was for the second floor of "12940 S. Western," in Blue Island, Illinois, and that the tenant, SSM, was a not-for-profit corporation that owned and operated St. Francis Hospital and that SSM's principal office was in Evanston, Illinois.

¶ 8 Section 3.02(a) of the lease provided, in relevant part, that:

"3.02(a) Landlord shall provide, at Tenant's expense:

(i) Heating, ventilation, and air conditioning equipment (HVAC) for the Premises ***

(iii) All improvements required in the leased space other than the bathrooms provided by Landlord shall be initially paid by Landlord upon occupancy of the Tenant and then billed back to the Tenant over a 5 year amortization schedule *in addition to the rent* (other than HVAC which shall be billed on a *15 year amortization schedule*)[.]" (Emphasis added.)

In its complaint, plaintiff alleged that it made HVAC improvements and had complied with all its obligations under the lease.

¶ 9 Plaintiff alleged that, on July 8, 2008, with plaintiff's consent, SSM assigned its interest and obligations under the lease to defendant. A letter, dated

July 8, 2008, and requesting the landlord's consent was attached to the complaint as "Exhibit B."[1] This letter is entitled "Consent to Assignment of Lease" from SSM to defendant, and is signed by both SSM and defendant. The letter states that an "Assignment of Landlord Leases" is attached to the letter, but this assignment was not included as an exhibit to the complaint.

¶ 10        Plaintiff alleged that defendant vacated the premises at the end of the lease term which, according to the lease, was on April 30, 2009.  Plaintiff alleged that it sent, on March 22, 2010, a final notice to defendant demanding $96,403.15 owed for improvements and that, in response, defendant had sent a payment for only $31,941.68. Defendant's payment excluded $64,401.47, which was the amount allegedly owed for HVAC improvements.  Plaintiff alleged that, on May 10, 2010, it mailed a letter to defendant demanding the $64,401.47 still allegedly owed and that, on May 21, 2010, it received a response stating that defendant had no intention of paying the remaining amount.  Although the complaint states that defendant's May 21, 2010, letter is attached as "Exhibit C," it was not.  As we note later, plaintiff subsequently filed an amended complaint in order to attach this missing document.

---

[1] In its answer, dated March 31, 2011, defendant stated that it "admits" that the lease was assigned to defendant and that "a true and correct copy of the assignment is attached as Exhibit B" to plaintiff's complaint.

¶ 11    Plaintiff's complaint, which was filed on August 10, 2010, alleged two counts: count I, for breach of contract; and count II, for anticipation of breach. Count I alleged that section 3.02 of the lease required defendant to pay $1,611.54 per month for the HVAC improvements, and that defendant failed to make the 17 payments due between April 2009 through August 2010 which totaled $27,396.18.  Count II alleged that plaintiff had already stated that it had no intention of paying for the HVAC improvements and that, between the day the complaint was filed and April 2014, defendant would owe an additional $37,065.29.  Thus, the complaint sought a total of $64,461.47, plus costs and other relief that may be just.

¶ 12    II. Defendant's First Motion to Dismiss

¶ 13    On October 27, 2010, plaintiff filed a motion for a default judgment which alleged that defendant had failed to file an appearance or other pleading. On November 8, 2010, the trial court ordered defendant to file its appearance or answer or otherwise plead within 30 days.  On November 15, 2010, defendant filed an appearance; and, on December 6, 2010, defendant filed a combined section 2-615 and section 2-619 motion to dismiss with prejudice (735 ILCS 5/2-615, 2-619 (West 2010)).

¶ 14    In its motion, defendant sought to dismiss (1) pursuant to section 2-615 on the ground that the lease allegedly barred plaintiff's claims; and (2) pursuant

to section 2-619 on the ground that plaintiff's claims arose prior to the assignment of the lease by SSM to defendant and that defendant had not assumed these claims.

¶ 15 In its motion, defendant acknowledged that plaintiff had entered into a five-year lease with SSM and that SSM later assigned this lease to defendant with plaintiff's consent. Defendant acknowledged that, upon assuming the lease and during the remaining term of the lease, defendant paid both the rent and the monthly payment for the HVAC improvements. However, defendant claimed that it was not obligated to pay the remaining cost of the HVAC improvements after the lease terminated.

¶ 16 In the alternative, defendant argued that the HVAC improvements were made prior to the assignment, and that defendant was liable only for those obligations which arose after the assignment.

¶ 17 Defendant attached as an exhibit to its motion a document entitled "Consent of Landlord to Assignment" (Consent), which appears to be signed by plaintiff landlord only. (This document is a different document from the July 8, 2008, letter which requested the landlord's consent and which was attached to the complaint and described above.) This Consent states that an "Assignment of Landlord Leases" is attached as "Exhibit A," but this "Exhibit A" is not attached to the Consent in the appellate record. The Consent states: "Landlord

acknowledges that [defendant] MSMC will be liable for those obligations under the Lease arising from and after the Assignment becomes effective." The immediately preceding line was crossed out by pen and the deletion was initialed. The deleted line stated that the landlord agreed "to release SSM from all of the lease obligations on and effective after the date of the Assignment."

¶ 18     On February 28, 2011, the trial court granted, without prejudice, defendant's 2-615 motion to dismiss count II, the anticipatory breach count. The trial court dismissed this count on the ground that, although the complaint stated that plaintiff had attached defendant's letter declaring defendant's intent not to pay, the letter was not actually attached to the complaint. Plaintiff was also granted 21 days to replead. The trial court also denied defendant's section 2-619 motion, finding that "a question of fact exists as to the obligations under the lease and assignment."

¶ 19     On March 10, 2011, plaintiff filed its amended verified complaint for the purpose of attaching "Exhibit C" which is defendant's May 21, 2010, letter which stated: "MSMC does not owe and will not pay the $64,461.47 you are demanding." Plaintiff's amended complaint also asked for costs and "such other relief as may be just and proper."

¶ 20                                    III. Defendant's Answer

¶ 21            On March 31, 2011, defendant filed its answer in which it admitted that plaintiff and SSM had entered into a commercial lease; that a copy of that lease was attached to plaintiff's complaint as exhibit A; that plaintiff had made HVAC improvements to the leased premises; that the lease was later assigned to defendant; that "a true and correct copy of the assignment is attached as Exhibit B" to the complaint; that plaintiff sent a demand letter "on or around March 22, 2010[,] seeking $96,403.15"; that defendant then "made a payment to [p]laintiff of rent"; that plaintiff sent another demand letter "on or around May 10, 2010[,] seeking $64,461.47; and that on May 21, 2010, defendant sent plaintiff a letter claiming that "under the terms of the Lease no further payments were owed."

¶ 22            In its answer, defendant also admitted that on "July 8, 2008, [defendant] MSMC assumed SSM's obligations under the Lease arising on or after the date of the assignment" and that it agreed to "make monthly rent payments, and make certain payments in addition to the rent."  Defendant also admitted that "Section 3.02 [of the lease] requires, in addition to rent, certain payments for the HVAC improvements from the effective date of the assignment."

¶ 23            Defendant specifically asked that "it be awarded its attorneys' fees and costs incurred in this action."

¶ 24        Defendant's answer also contained three affirmative defenses: (1) failure to mitigate damages; (2) a prior release or discharge contained in the assignment which released defendant from obligations arising prior to the assignment; and (3) a "no meeting of the minds/mistake" defense.

¶ 25        In plaintiff's answer to defendant's interrogatories, filed August 4, 2011, plaintiff stated that "[t]he property was sold and to the best of [p]laintiff's knowledge, is vacant."

¶ 26                    IV. Defendant's Motion to Dismiss for Lack of Standing

¶ 27        On September 19, 2011, defendant filed a motion to dismiss for lack of standing.   In its motion, defendant stated that, although plaintiff sought payments which it claimed were due between April 2009 and April 2014, plaintiff sold the property on March 26, 2011, to the Board of Trustees of Community College District No. 524 (the community college).   Defendant claimed that plaintiff had conveyed its entire interest in the property and thus had no standing to bring an action for breach of lease.   Defendant also observed that plaintiff had specifically retained the right to collect amounts from another lessee, namely, Kaleidoscope, Inc., but did not do so with respect to defendant.

¶ 28        On October 3, 2011, plaintiff produced the sale documents, in response to a document request by defendant.   This document production contained a "rent roll" which listed the tenants as of March 30, 2011.   Since defendant was no

longer a tenant, it was not listed. At the bottom of the current rent roll, someone had written by hand that "seller has retained the right to collect from Kaleidescope from the monthly [*sic*] through 12/7/11 the amount equal to 211,623.84 for tenant improvements."

¶ 29    The document production also contained a "Post-Closing Lease Assignment Agreement," which stated that plaintiff had assigned the Kaleidoscope lease to the community college. With respect to the assignment, the agreement stated:

> "Pursuant to Section 3.02(a) of the Kaleidoscope
>
> Lease, AM Realty made certain tenant improvements to the
>
> Kaleidoscope space and Kaleidoscope has agreed to
>
> reimburse AM Realty for these expenses plus interest over a
>
> period of five (5) years to and including the end of calendar
>
> year 2011.
>
>    D. As part of the sale transaction of the Subject
>
> Property, AM Realty has assigned the Kaleidoscope Lease
>
> to the College.
>
>    E. However, the parties have determined that it is
>
> more efficient for AM Realty to reserve its right to payment

under Section 3.02 with respect to these tenant improvements."

¶ 30    Thus, it was from the assignment of the lease that plaintiff reserved the right to collect amounts owed from tenant improvements. Since defendant was not a current tenant at the time of the sale, there was no assignment of defendant's lease and hence no need to reserve a right to prevent it from being assigned away.

¶ 31    Additional language in the "Post-Closing Lease Assignment Agreement" makes clear that the assignment was the reason for the reservation. The agreement provided that: "AM Realty's Assignment of the Kaleidoscope Lease to the College shall not include AM Realty's right to continue to receive tenant improvement payments due and owing AM Realty from Kaleidescope pursuant to Section 3.02 of the Kaleidoscope Lease."

¶ 32    In its response to defendant's motion, plaintiff argued that it had paid funds out of its own pocket to improve the property as defendant's predecessor had requested, pursuant to an agreement that plaintiff would be paid back. Plaintiff argued that the agreement was similar to a loan.

¶ 33    On November 17, 2011, the trial court issued a written order that stated in full:

"This matter coming to be heard on Defendant MSMC

Realty, LLC's motion to dismiss for lack of standing,

counsel being present, and the court fully advised in the

premises, it is hereby ordered:

(1) MSMS Realty, LLC's motion is granted and this

matter is dismissed with prejudice."

¶ 34    Although the order contains a "(1)," there was no "(2)."

¶ 35    On December 19, 2011, plaintiff filed a motion to reconsider, in which it argued that plaintiff had standing to seek the entire amount of the HVAC improvements because this obligation had accrued prior to both the termination of the lease and the sale of the property. In the alternative, plaintiff argued that, at the very least, it had the right to collect the payments that were due prior to March 30, 2011, which was the date of the property sale.

¶ 36    On March 23 2012, the trial court denied plaintiff's motion in a written order that stated in full:

"This matter comes before the Court on Plaintiff's Motion to

Reconsider its Order of November 17, 2011[,] which

dismissed the Complaint for lack of standing. After due

consideration of Plaintiff's Motion to Reconsider, Defendant

MSMC Realty, LLC's Response to said Motion and

Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reconsider and after review of the applicable caselaw regarding matters appropriately considered when dealing with motions to reconsider and after a review of the submissions giving rise to the November 17, 2011[,] order Plaintiff's Motion to Reconsider the Order of November 17, 2011[,] is DENIED."

¶ 37 Plaintiff filed a notice of appeal, seeking review of the November 17, 2011, order dismissing the complaint for lack of standing and the March 23, 2012, order denying plaintiff's motion for reconsideration.

¶ 38                                  V. The First Appeal

¶ 39 The sole issue on appeal was whether plaintiff had standing to sue after plaintiff's sale of the building. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2012 IL App (1st) 121183, ¶ 30. Plaintiff argued that it had standing, since defendant's obligation to pay had accrued prior to plaintiff's subsequent sale of the building. *A.M. Realty*, 2012 IL App (1st) 121183, ¶¶ 26, 31. Plaintiff argued that the sale of the building did not extinguish plaintiff's standing to bring the instant case because the payments in the lease were akin to a loan, which became due once the improvements were made and thus before the property was sold. See *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 40.

¶ 40    We agreed, stating that, "if there is a debt as plaintiff claims in its complaint, it matured before the property was sold." *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 43.  We explained that "[p]laintiff alleges that it fully performed its HVAC obligation under the lease when it improved the HVAC units on the property.  If plaintiff fully performed" its HVAC obligation "as it alleges, then the alleged debt to repay for these improvements had matured" under the lease, when the improvements were made and thus "prior to the sale of the property." *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 44.  "Since defendant's debt had allegedly matured, it did not pass on to the subsequent owners of the property." *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 45.

¶ 41    We held that "defendant's alleged obligation to pay had accrued prior to the end of the lease" (*A.M. Realty*, 2012 IL App (1st) 121183, ¶ 49).  Although our opinion was limited to the issue of standing  (*A.M. Realty*, 2012 IL App (1st) 121183, ¶ 52), this conclusion about when the obligation accrued was a necessary step, and hence a part of our holding. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277-78 (2009) (a holding is "essential to the disposition of the cause"); *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 20 ("*dicta* [is] unnecessary to the court's holding"); *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶ 24 (an issue that "we necessarily had to address" is not *dicta*).   However, defendant's "alleged" obligation was

14

predicated on plaintiff's full performance.  As we explained, only "[i]f plaintiff fully performed" its HVAC obligation under the lease "as it alleges," did "the alleged debt to repay for these improvements" mature. *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 44.  Thus, we remanded for further proceedings on the merits. *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 52.

¶ 42                                   VI. After Remand

¶ 43        After remand, plaintiff moved for substitution of judge, which was granted on August 2, 2013.  Defendant did not object.

¶ 44        Also after remand, defendant moved for leave to amend its affirmative defenses and plaintiff filed a motion objecting.  On June 16, 2014, the trial court denied plaintiff's motion and ordered plaintiff to answer.  Defendant's amended affirmative defenses alleged:  (1) that plaintiff failed to mitigate damages after the lease ended; (2) that the July 29, 2008, assignment of lease discharged or released defendant from paying the HVAC payments; and (3) that there was "no meeting of the minds as to payment of the HVAC improvement after expiration" of the lease.  Plaintiff's answer is not in the record before us.

¶ 45        On October 21, 2014, defendant filed a motion for summary judgment on the grounds (1) that "the lease did not require [defendant] to make HVAC payments after the lease expired" and (2) that plaintiff was "attempting to recover the same damages twice" because "it sold the property, including the

still-functioning HVAC unit." In its response, dated November 18, 2014, plaintiff argued that "this exact same issue" about the lease had already been argued in defendant's motion to dismiss for lack of standing and had been denied. In addition, plaintiff argued: that the lease required defendant to make full payment on the requested improvements; and that plaintiff sold the building at a loss, for less than the loan amount, such that the lender received all the funds from the building's sale and thus plaintiff was not seeking to collect damages twice. In its reply, defendant argued, among other things, that a matter may be resolved on summary judgment, despite an earlier denial of a motion to dismiss, "because different standards apply. In its reply, defendant did not dispute plaintiff's factual assertion that the entire purchase price went to the lender, but argued instead that the "amount that [plaintiff] owed and paid to the bank [did] not affect the fact that [plaintiff] received funds for the HVAC units."

¶ 46    On December 19, 2014, the trial court issued a written opinion granting defendant's motion for summary judgment. First, the trial court quoted section 3.02 of the lease which provides that "all improvements *** shall be initially paid by the Landlord upon occupancy of the Tenant and then billed back to the tenant over a 5 year amortization schedule in addition to the rent (*other than* HVAC which shall be billed on a *15 year* amortization schedule)." (Emphasis

added.) Without discussing the parenthetical which begins "other than HVAC," the trial court held that defendant was not required to make further HVAC payments "because the lease explicitly provides for a five-year term."

¶ 47　　Although it ruled in defendant's favor, it held that defendant was "not entitled to damages." The trial court did not specify what "damages" it was rejecting. However, the only monies that defendant requested in its answer were for attorney fees and costs.

¶ 48　　The trial court also rejected plaintiff's argument that there was no double recovery "when it sold the property for less than what was owed to the bank." The trial court rejected this argument, holding: "Regardless of where the funds went after they were received, [plaintiff] was compensated for the value of the units and cannot be compensated a second time."

¶ 49　　In its last line, the trial court's opinion stated: "This is a final order that disposes of the case in its entirety without further notice." The order did not state " that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 50　　On January 20, 2015,[2] plaintiff filed a motion to reconsider. Plaintiff argued that the trial court's holding overlooked the 15-year amortization and

---

[2] The 30-day time limit to file the motion to reconsider would normally have expired on January 18, 2015. 735 ILCS 5/2-1203(a) (West 2014) ("In all cases

repayment schedule specifically included in the lease for the HVAC improvements. Plaintiff also argued that the appellate court, when it reversed and remanded the case on the issue of standing, "said that the Defendant owes this money," and that the subsequent sale is irrelevant to defendant's prior-existing obligation to pay for the improvements. Plaintiff argued that, in finding a lack of damages, the trial court relied on the deposition testimony of Andrew Duren, a representative of the purchaser. However, Duren did not testify that the market value of the HVAC units caused the purchaser to increase its purchase price, but rather that, when calculating the price, the purchaser took into account whether it would need to repair or replace the heating and cooling system.

¶ 51    On March 30, 2015, the trial court denied plaintiff's motion for reconsideration. The trial court noted that, in its order granting summary judgment, it found: (1) that the lease did not require defendant to make payments for the HVAC improvements after the lease terminated; and (2)

---

tried without a jury, any party may, within 30 days after entry of the judgment *** file a motion for rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.") However, January 18, 2015, was a Sunday and the following day, January 19, was Martin Luther King Day. *Herlehy v. Marie V. Bistersky Trust*, 407 Ill. App. 3d 878 (2010) (the 30-day period for filing a motion under section 2-1203 of the Code of Civil Procedure was extended when the last day fell on a holiday). Thus, the motion to reconsider was timely filed.

plaintiff was not entitled to damages. The trial court denied plaintiff's motion to reconsider because plaintiff was making the same arguments.

¶ 52    The first order which the trial court entered on March 30, 2015, stated that "defendant's" motion to reconsider was denied "without prejudice." On the same day, the trial court issued an "amended order" which stated that "plaintiff's" motion to reconsider was denied "with prejudice." The amended order also stated: "This is a final order that disposes of the case in its entirety without further notice." Similar to the order granting summary judgment, this order did not make "an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 53    On April 8, 2015, defendant filed a motion in the trial court for attorney fees and costs, on the ground that section 10.2 of the lease provides that, "in any litigation between the parties regarding this Lease, the losing party shall pay to the prevailing party all reasonable expenses and court costs including attorneys' fees incurred by the prevailing party." Pursuant to this lease provision, defendant sought $107,461 in attorney fees and $4,797 in court costs, and attached a supporting affidavit. The amount which plaintiff had sought under the lease was $64,461.

¶ 54    On April 15, 2015, the trial court issued a written order which granted defendant leave to file its motion for fees and costs, and which set a briefing schedule for the motion. On April 15, 2015, plaintiff also filed a notice of appeal.

¶ 55    In the trial court's "briefing schedule order," plaintiff was directed to file its response to defendant's motion for fees and costs by May 13, 2015, and defendant was directed to file its reply by May 27, 2015. In its brief to this court, plaintiff alleges: "The Trial Court Record is missing (1) Plaintiff's Response to Defendant's Motion for Attorney's Fees and Costs, seeking stay on the decision, and (2) Defendant's Reply [to] Plaintiff's Response to its Motion for Attorneys' Fees and Costs." The appellate record does not contain these two documents.

¶ 56    VII. After Filing the Notice of the Second Appeal

¶ 57    On June 30, 2015, plaintiff filed a motion in the appellate court, pursuant to Illinois Supreme Court Rule 305 (eff. July 1, 2004), seeking to stay the trial court proceedings pending resolution of this appeal. In its motion, plaintiff alleged that it had filed a response to defendant's motion for attorney fees and costs, in which it requested a stay of the trial court's decision pending this appeal. Plaintiff also alleged that the trial court granted defendant's motion and entered an order directing plaintiff to pay $93,843 to defendant.

¶ 58    Plaintiff attached to its motion a copy of the trial court's order, but it did not attach a copy of its response in which it requested a stay.  However, in the order, dated June 12, 2015, the trial court observed that plaintiff had requested that the trial court either stay its decision or deny defendant's fee petition.

¶ 59    In the order, the trial court summarized the parties' arguments as follows. Defendant "argues that despite the fact that the Lease terminated at the end of the lease term, it is still entitled to attorneys' fees and costs pursuant to [section] 10.08 of the agreement. [Defendant] contends that the Court has jurisdiction to enter a ruling on its post-judgment motion because 'it is ancillary to the original judgment.' "

¶ 60    The trial court summarized plaintiff's arguments as follows:

"[Plaintiff] argues that the Court should deny [defendant's] fee petition or in the alternative, stay its decision. [Plaintiff] argues that because the Court's decision to grant summary judgment in favor of [defendant] is currently being appealed, [defendant] 'does not meet the definition of a prevailing party] until after [plaintiff] has exercised its right to an appeal.' [Plaintiff] argues that it will face 'extreme hardship' if the Court does not grant its request to stay the decision on [defendant's] motion for attorney's

fees and costs. [Plaintiff] argues that because [defendant's] motion for attorney's fees and costs is 'inherently related to the subject matter of the appeal,' then the Court does not have jurisdiction to rule on [defendant's] motion. [Plaintiff] further argues, among other things, that based on the Court's December 19, 2014, order, the fee shifting provision does not apply and the Court should not use said provision as a basis to grant [defendant's] motion for fees. Alternatively, [plaintiff] argues that the Court should partially deny [defendant's] attorney's fees and costs because they are excessive and unreasonable."

¶ 61    The order then granted defendant's motion for attorney fees and costs in the following amounts:  $89,046 in attorney fees; and $4,797 in costs. The order further stated that:  "This is a final order that disposes of this case in its entirety."  Thus, the trial court entered a series of three orders which all stated that "[t]his is a final order that disposes of this case in its entirety."  These three orders were:  the order granting summary judgment; the order denying plaintiff's motion for reconsideration; and the order granting defendant costs and attorney fees.

¶ 62        In defendant's response, filed July 10, 2015, to plaintiff's motion in the appellate court, defendant argued that plaintiff had failed to file a motion for a stay in the trial court, contending that "[m]aking a request in a response brief is not the same as filing a motion." Ill. S. Ct. R. 305(d) (eff. July 1, 2004) ("application for a stay ordinarily must be made in the first instance to the circuit court"). Defendant also argued that plaintiff had failed to offer "to post a bond or any other security pending appeal." Ill. S. Ct. R. 305(a) (eff. July 1, 2004) ("The enforcement of a judgment for money only *** shall be stayed if a timely notice of appeal is filed and an appeal bond or other form of security *** is presented to, approved by, and filed with the court within the time for filing the notice of appeal or within any extension of time granted."). In addition, defendant argued that plaintiff's "response in the circuit court and motion in this Court make no reference to a bond." As previously noted, there is no copy of plaintiff's response in the record before us.

¶ 63        On July 16, 2015, this court issued an order stating: "Plaintiff/Appellant's Motion to Stay Trial Court Proceeding is hereby Denied for failure to comply with Ill. S. Ct. Rule 305(d) requesting a stay in the trial court, and also for failure to request the setting of bond." The parties' appellate briefs were then filed after our July 16, 2015, order, and this appeal followed.

¶ 64                                    ANALYSIS

¶ 65        Plaintiff appeals the trial court's grant of summary judgment in favor of defendant, as well as the trial court's denial of its motion to reconsider.  For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 66                        I. Duty to Consider Jurisdiction

¶ 67        Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal. *Daewoo International v. Monteiro*, 2014 IL App (1st) 140573, ¶ 72 ("An appellate court has a duty to consider its own jurisdiction, whether or not the parties have raised it as an issue.").  See also *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009) ("courts of review have an independent duty to consider [their own subject matter] jurisdiction even if a jurisdictional issue is not raised by the parties," and subject matter jurisdiction is a "threshhold issue"); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its [own subject matter] jurisdiction before proceeding in a cause of action regardless of whether either party has raised the issue.").

¶ 68        Our supreme court has stated that the ascertainment of a court's own jurisdiction is one of the "most important tasks of an appellate court panel when

beginning the review of a case." *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal[.]"); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action.").

¶ 69                           II. Notice of Appeal is Jurisdictional

¶ 70        An appellate court's jurisdiction is dependent on the appellant's timely filing of a notice of appeal. *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 19. In fact, the timely filing of a notice of appeal is the only jurisdictional step needed for initiating appellate review. *People v. Patrick*, 2011 IL 111666, ¶ 20. An appellant's failure to file a timely notice leaves this court without jurisdiction to hear his or her appeal. *Huber*, 2014 IL 117293, ¶ 19 (where the appellant filed his notice of appeal after the 30-day deadline provided in the relevant supreme court rule, the appellate court was correct in dismissing the appeal for lack of jurisdiction); *Patrick*, 2011 IL 111666, ¶ 20. To ascertain whether a notice of appeal was timely filed, we turn to the relevant supreme court rules which govern filing.

¶ 71                           III. Rules of Statutory Interpretation

¶ 72        Since interpretation of a supreme court rule presents purely a question of law, our review proceeds *de novo*. *VC&M, Ltd. v. Andrews*, 2013 IL 114445,

25

¶ 13 (the proper interpretation of Supreme Court Rule 303(a) "presents purely a question of law" and thus "proceeds *de novo*"). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Accel Entertainment Gaming, LLC v. Village of Elmwood Park*, 2015 IL App (1st) 143822, ¶ 27.

¶ 73     When interpreting a supreme court rule, we are governed by the same rules that govern statutory interpretation. *VC&M Ltd.*, 2013 IL 114445, ¶ 30; *Hollywood Boulevard Cinema, L.L.C. v. FPC Funding II, L.L.C.*, 2014 IL App (2d) 131165, ¶ 19. Under these rules, our primary objective is to ascertain and give effect to the intent of the rule's drafters. *VC&M Ltd.*, 2013 IL 114445, ¶ 30; *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 19. The most reliable indication of the drafters' intent is the language used in the rule itself, which should be given its plain and ordinary meaning. *VC&M Ltd.*, 2013 IL 114445, ¶ 30; *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 19. If we determine that a supreme court rule is ambiguous, or susceptible to more than one reasonable interpretation, then we may consider the committee comments, in order to ascertain the reason and necessity for the rule and the purpose to be served by it. *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 19 (citing *Friedman v. Thorson*, 303 Ill. App. 3d 131, 135 (1999)).

¶ 74                                IV. Rule 303

¶ 75          Illinois Supreme Court Rule 303(a)(1) provides that a notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from.  Ill. S. Ct. R. 303(a)(1) (eff. June 4, 2008).[3] In the case at bar, on December 19, 2014, the trial court granted summary judgment and entered an order stating that it was "a final order that disposes of the case in its entirety."

¶ 76          However, Rule 303 further provides that, if a timely posttrial motion directed against the judgment is filed, then the notice of appeal must be filed within 30 days after the entry of the order disposing of that motion. Ill. S. Ct. R. 303(a)(1) (eff. June 4, 2008). In the case at bar, plaintiff filed a motion to reconsider on January 20, 2015, which was within the 30-day time limit after the order granting summary judgment.[4]  On March 30, 2015, the trial court denied that motion; and plaintiff filed a notice of appeal on April 15, 2015, which was well within the 30-day period after the trial court's denial. Ill. S. Ct. R. 303(a)(1) (eff. June 4, 2008) (the notice of appeal must be filed within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against the judgment); see also Ill. S. Ct. R. 274 (eff. Jan. 1,

---

[3]Supreme Court Rule 303 was amended effective January 1, 2015, after summary judgment was granted in this case. However, the amendment has no effect on this case.

[4] See footnote 2.

2006) ("each timely postjudgment motion shall toll the finality and appealability of the judgment or order at which it is directed").

¶ 77    However, on April 8, 2015, defendant filed a motion in the trial court with a claim for attorney fees and costs; and the trial court granted defendant leave to file the motion on April 15, 2015, and set forth a briefing schedule. April 15 was also the same day that plaintiff filed its notice of appeal. *Herlehy v. Marie V. Bietersky Trust*, 407 Ill. App. 3d 878, 898 (2010) ("A circuit court has jurisdiction to entertain a motion for attorney fees filed within 30 days of the entry of a final judgment without regard to a previously filed notice of appeal."), discussed with approval in *Illinois Department of Financial & Professional Regulation (IDFPR) v. Rodriguez*, 2012 IL 113706, ¶ 32.

¶ 78    Rule 303(a)(2) provides that, when a timely postjudgment motion has been filed by any party, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of the motion or claim is entered. Ill. S. Ct. R. 303(a)(2) (eff. June 4, 2008); *F.H. Prince & Co, Inc. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983 (1994) ("A request for attorneys' fees is a claim within the meaning of Supreme Court Rule 304(a)" which governs the finality of judgments). Thus, if Rule 303 ended there, there would be no doubt that plaintiff's notice of appeal became

"effective" when the trial court entered an order, on June 12, 2015, "disposing of the motion or claim" for attorney fees and costs.[5] Ill. S. Ct. R. 302(a)(2) (eff. June 4, 2008).

¶ 79       However, Section 303 continues and it provides, in relevant part:

"A party intending to challenge an order disposing of any postjudgment motion or separate claim, or a judgment amended upon such motion, *must* file a notice of appeal, or an amended notice of appeal within 30 days of the entry of said order or amended judgment ***." (Emphasis added.) Ill. S. Ct. R. 303(d) (eff. June 4, 2008).

¶ 80       As the appellate court has previously observed, the above language is capable of two reasonable interpretations. In *Hollywood Boulevard*, the Second

---

[5] Without the June 12 order, the appeal would have been premature. *Bale v. Barnhart*, 343 Ill. App. 3d 708, 711-12 (2003) (a "timely motion for attorney fees *** renders the appeal premature" until the issue is resolved). For example, in *Bale*, the appellate court held that "there was no final judgment because the order *** left unresolved the issue of attorney fees–an issue raised in the pleadings." *Bale*, 343 Ill. App. 3d at 712. Similarly, in the case at bar, the issue of attorney fees was raised in the pleadings. Thus, without the June 12 order, this appeal would also have been premature. *Bale*, 343 Ill. App. 3d at 712 ("Absent a final judgment, we lack jurisdiction over [appellant's] appeal under Rule 303."). See also *F.H. Prince*, 266 Ill. App. 3d at 983-84 ("*if a trial court has jurisdiction* to hear a claim for fees, any other judgment entered in the case before the claim for fees is ruled upon is or becomes nonfinal and nonappealable when the claim for fees is made, unless the prior judgment contains the language set forth in Supreme Court Rule 304(a), that there is no just reason to delay enforcement or appeal" (emphasis in original)).

District explained that the above language "could be read [(1)] to require a new or an amended notice of appeal only if the party is challenging a judgment *insofar as it is amended*. In other words, the party would need to file a new or an amended notice of appeal only if challenging the amendment to the judgment." (Emphasis in original.) *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 20. Yet, this same language could also "be read [(2)] to require a new or an amended notice of appeal if the party is challenging a judgment that *has been amended*." (Emphasis in original.) *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 20.

¶ 81 In the case at bar, plaintiff did not file a notice of appeal or an amended notice of appeal after the entry of the trial court's June 12, 2015, order granting defendant's motion for attorney fees and costs.

¶ 82 When the language of a supreme court rule is ambiguous, we may turn to the committee notes for guidance, in order to ascertain the reason and purpose underlying the rule. *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 21 (citing *Friedman*, 303 Ill. App. 3d at 135). In the Committee Comments to Rule 303, the drafters of the rule explained that: "where the postjudgment order grants new or different relief than the judgment itself, or resolves a separate claim, a second notice of appeal is necessary to preserve an appeal from such [an] order." Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007).

Interpreting this rule and its explanatory comments, the appellate court held that, if a trial court awards " 'new and different relief than the judgment itself,' " then a new or amended notice of appeal is necessary to appeal from the order granting the new or different relief. *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 22 (quoting Ill. S. Ct. R. 303(d), Committee Comments (adopted Mar/ 16, 2007)). In the case at bar, since plaintiff chose not to file a new or amended notice of appeal, the fees-and-costs order is not on appeal before us.[6]

¶ 83    However, the issue of summary judgment is properly before us, since the notice of appeal became effective once the trial court issued its order disposing of defendant's motion. Ill. S. Ct. R. 303(a)(2) (eff. June 4, 2008). In *Hollywood Boulevard*, 2014 IL App (2d) 131165, ¶ 28, the Second District held, as we do here: "to the extent that [appellant] challenges only the undisturbed portion of the [original] judgment, he was not required to file a new or an amended notice of appeal after the trial court amended the judgment. [Appellant's] premature notice of appeal *** became effective once the court disposed of his postjudgment motion *** and it confers jurisdiction on this court to review the undisturbed portion of the [original] judgment." Thus, we have jurisdiction to

---

[6] In addition, we observe that the issue of fees and costs is not discussed in the briefs to this court, which were filed after both the trial court's June 12, 2015, order and our July 16, 2015, order denying a stay.

consider the undisturbed portion of the original judgment which, in the case at bar, was the trial court's grant of defendant's summary judgment motion.

¶ 84                                        V. Standards for Summary Judgment

¶ 85        " 'Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt.' " *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1059 (2010) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)).  It is appropriate only when the pleadings, depositions and admissions on file, taken together with any affidavits and exhibits, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pekin Insurance*, 402 Ill. App. 3d at 1058-59 (citing 735 ILCS 5/2-1005(c) (West 2008)).  In making this determination, the court must view the relevant documents in the light most favorable to the nonmoving party. *Pekin*, 402 Ill. App. 3d at 1058-59 (citing 735 ILCS 5/2-1005(c) (West 2008)).

¶ 86        A defendant moving for summary judgment bears the initial burden of proof. *Erie Insurance Exchange v. Compreve Corp.*, 2015 IL App (1st) 142508, ¶ 15. The defendant may meet its burden of proof either by affirmatively showing that some element of the case must be resolved in its favor or by establishing an absence of evidence to support the nonmoving party's case. *Erie Insurance*, 2015 IL App (1st) 142508, ¶ 15.   "In other words, there is no

32

evidence to support the plaintiff's complaint." *Erie Insurance*, 2015 IL App (1st) 142508, ¶ 15. "'Mere speculation, conjecture or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.* 309 Ill. App.3d 313, 328 (1999) (citing *Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 874 (1992). " 'To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 87        We review *de novo* a trial court's decision on a summary judgment motion. *Pekin Insurance,* 402 Ill. App. 3d at 1059 (citing *Outboard Marine*. 154 Ill. 2d 90, 102 (1992)). As we stated above, *de novo* consideration means that we perform the same analysis that a trial judge would perform. *Erie Insurance Exchange v. Compreve Corp.*, 2015 IL App (1st) 142508, ¶ 14.

¶ 88                         VI. Grounds for Summary Judgment

¶ 89        In the case at bar, defendant sought summary judgment on the grounds (1) that "the lease did not require [defendant] to make HVAC payments after the lease expired" and (2) that plaintiff was "attempting to recover the same damages twice" because "it sold the property, including the still-functioning HVAC unit." The trial court found for defendant on both grounds.

¶ 90        Both of these holdings contradict our prior opinion. First, the trial court held that defendant was not required to make HVAC payments after the lease expired. *A.M. Realty*, 2012 IL App (1st) 121183.  However, we held that "defendant's alleged obligation to pay had accrued prior to the end of the lease." *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 49.  Although our opinion was limited to the issue of standing  (*A.M. Realty*, 2012 IL App (1st) 121183, ¶ 52), this conclusion about when the obligation accrued was a necessary step, and hence a part of our holding. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277-78 (2009) (a holding is "essential to the disposition of the cause"); *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 20 ("*dicta* [is] unnecessary to the court's holding"); *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶ 24 (an issue that "we necessarily had to address" is not *dicta*).[7]  However, defendant's "alleged" obligation was predicated on plaintiff's full performance.  As we explained, only "[i]f plaintiff fully performed" its HVAC obligation under the lease  "as it alleges," did "the alleged debt to repay for these improvements" mature. *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 44.  Thus, we remanded for further proceedings on the merits, principally on

---

[7] At oral argument, defendant appeared to be arguing that our prior opinion in this case was incorrect.  Defendant argued that we were not bound by what we had previously decided with respect to the prior motion to dismiss and that "if you follow [this court's prior holding] to its conclusion, I don't think it leads you to a correct place in the law."  However, we adhere to our precedent for the reasons stated in that opinion. *A.M. Realty*, 2012 IL App (1st) 121183.

whether plaintiff had fully performed its HVAC obligation under the lease. *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 52. The trial court, however, ruled on a different issue.

¶ 91 At oral argument on March 15, 2016, this court asked defendant several times whether plaintiff had fully performed and defendant conceded that plaintiff had. For example, in the following colloquy, defendant admitted that plaintiff had fully met its obligations under the contract:

"JUSTICE REYES: Did the plaintiff here fully meet their obligations under the contract?

DEFENSE COUNSEL: Yes.

JUSTICE REYES: In what capacity?

DEFENSE COUNSEL: They provided the rental space. They improved the property."

When asked again about this issue, defense counsel repeated that "[t]here was no dispute as to the provisions of these things" by plaintiff.

¶ 92 Second, the trial court held that plaintiff was "attempting to recover the same damages twice" because "it sold the property, including the still-functioning HVAC unit." On the first appeal, plaintiff argued that it had standing, since defendant's obligation to pay had accrued prior to plaintiff's subsequent sale of the building. *A.M. Realty*, 2012 IL App (1st) 121183, ¶¶ 26,

35

31. Plaintiff had argued that the sale of the building did not extinguish plaintiff's standing to bring the instant case because the payments in the lease were akin to a loan, which became due once the improvements were made and thus before the property was sold. See *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 40.

¶ 93    We agreed, stating that, "if there is a debt as plaintiff claims in its complaint, it matured before the property was sold." *A.M. Realty*, 2012 IL App (1st) 121183, ¶ 43. We explained that "[p]laintiff alleges that it fully performed its HVAC obligation under the lease when it improved the HVAC units on the property. If plaintiff fully performed [the HVAC improvements] as it alleges, then the alleged debt to repay for these improvements had matured" when the improvements were made and thus "prior to the sale of the property." A.M. Realty, 2012 IL App (1st) 121183, ¶ 44. "Since defendant's debt had allegedly matured, it did not pass on to the subsequent owners of the property." A.M. Realty, 2012 IL App (1st) 121183, ¶ 45. Since defendant's debt to pay had accrued prior to the sale, the subsequent sale was irrelevant.

¶ 94    Thus, the grounds for the trial court's grant of summary judgment

contradict our prior opinion, and we must reverse.

¶ 95                                   CONCLUSION

¶ 96            For the foregoing reason, we reverse and remand for further proceedings

consistent with this opinion.

¶ 97            Reversed and remanded.

¶ 98            JUSTICE LAMPKIN, specially concurring.

¶ 99            I concur in the judgment only.