2022 IL App (1st) 211074
No. 1-21-1074
Opinion filed June 30, 2022

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21 M1 400022 |
| DELORES L. BRYAN; URBAN RENEWAL REAL ESTATE & CONSTRUCTION , INC.; and UNKNOWN OWNERS AND NONRECORDED CLAIMANTS, | ) ) ) ) | The Honorable Patrice Bell-Reid Judge, presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Urban Renewal Real Estate and Construction, Inc. Defendant-Appellant). | ) ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Urban Renewal Real Estate & Construction, Inc., (Urban Renewal) appeals a trial court's order to refund money to a customer. The order was entered in response to the City of Chicago's oral motion for either civil contempt or summary judgment. Urban Renewal argues that the order is a civil contempt order and, as such, the order is invalid on its face because (1) it does not contain a purge provision and (2) it seeks to compensate an aggrieved

party rather than compel compliance. The City of Chicago (City), which is both the sole plaintiff in the underlying case and the sole appellee in this appeal, agrees on appeal that the trial court should have included an express purge provision in the order and asks this court to remand the matter to the trial court for the sole purpose of setting the purge.

¶ 2        From the face of the order, it is not clear whether the order is civil contempt, criminal contempt, or a final judgment. The order is not labeled, and in the court below, the City refused to agree to the contempt label. We are sending this case back to permit the trial court to enter the type of order that it finds appropriate.  For the following reasons, we vacate the order and remand for further proceedings consistent with this opinion.

¶ 3                                             BACKGROUND

¶ 4        On February 11, 2021, the City filed a complaint, pursuant to its police power, seeking to abate what it alleged were dangerous and unsafe conditions at a privately-owned property and to obtain equitable relief and civil penalties. The complaint alleged that the subject property was a single family home on Essex Street, owned by defendant Delores L. Bryan, and that Urban Renewal was a general contractor that had agreed to do the work needed to assure compliance with the building code.

¶ 5        On March 26, 2021, the trial court issued an order directing defendants to appear for an inspection on April 2, 2021. On April 8, 2021, the trial court ordered Urban Renewal to schedule and be present for an inspection with the Department of Buildings and directed a "city inspector to submit [an] inspection report to all parties." On May 20, 2021, the trial court ordered Cory Parham, the president of Urban Renewal, "to start work at [the] property immediately and to provide any and all receipts for work completed to the City and defendant Bryan before the next court date" of June 3, 2021.

¶ 6    On June 3, 2021, the City filed a petition for rule to show cause why Urban Renewal "should not be held in indirect civil contempt" of court. The petition alleged that Urban Renewal had failed to comply with the court's May 20 order to start work immediately. On June 3, 2021, the trial court ordered Urban Renewal to appear at the next court date and ordered Bryan to obtain three "bids to complete the necessary work detailed in the City's inspection report."

¶ 7    On June 17, 2021, the trial court entered an "Agreed Order" which provided that Urban Renewal agreed to resume work on Saturday, June 19, 2021, with an anticipated completion date of July 3, 2021.  The order further provided the following:

> "If Urban Renewal does not start work on the agreed date of 6/19/21, they shall be found in indirect civil contempt of court and shall pay $100.00 per day until contempt is purged."

In the June order, Urban Renewal further agreed: (1) to schedule and be present for an inspection with the Department of Buildings before the next court date on July 1, and (2) to compile and submit to the City and to Bryan all receipts, invoices, contracts and bank statements that reflected the work performed to date.

¶ 8    On July 1, 2021, the court ordered Urban Renewal "to provide documentation of work completed along with information on [its] contractor's license and bond insurance by" July 6, 2021.  On July 6, 2021, Urban Renewal filed a memo in opposition to the City's "oral motion for a finding of contempt and summary judgment."  On July 15, 2021, the trial court issued an order directing Urban Renewal "to refund Ms. Bryan $73,888—the amount she paid to him [*sic*] to complete the first (2) phases of a (5) phase project."

¶ 9         On July 22, 2021, Urban Renewal filed a "motion to vacate [the] civil contempt order" entered on July 15, 2021. Urban Renewal argued, among other things, that the civil contempt order was invalid on its face because it failed to contain a purge provision. On July 29, 2021, the trial court entered an order stating that "Urban Renewal's motion to vacate civil contempt order is set for hearing at the next court date" of August 26, 2021, and that all parties had until August 12, 2021, to respond, with the reply due by August 23. On August 12, Bryan filed her own motion seeking payment for $147,188, instead of the $73,888 ordered by the court. In response, the City argued, among other things, that the trial court had "entered the appropriate order" and that a trial court had broad discretion to fashion such remedies and grant such relief in equity as may be required to remedy a wrong. In its reply, Urban Renewal argued that the order must be vacated, since a civil contempt order must provide a purge condition, and this order did not have one.

¶ 10         On August 27, 2021, Urban Renewal filed a "motion for entry of order." The motion alleged that, on August 26, 2021, the trial court had made an oral ruling denying Urban Renewal's motion to vacate; that the court directed the parties to submit a proposed written order; and that the parties failed to reach an agreement about the wording of the proposed order. The motion alleged that the City's proposed order did not state that it was a civil contempt order; that Urban Renewal had asked for the addition of the words "civil contempt"; and that the City had refused. The motion, therefore, asked the court for a written order stating the basis for its ruling. On August 27, 2021, Urban Renewal also filed a notice of appeal with this court.

¶ 11         On October 18, 2021, this court granted Urban Renewal's request to file a supplemental record. The supplemental record included an affidavit from Urban Renewal's attorney averring that he had received on October 8, 2021, an e-mail from the trial judge, stating that she was

signing an "order indicating the basis of the contempt" and that her clerk "will stamp it when she returns on Tuesday."[1]

¶ 12     The supplemental record contains a written order that is stamped and dated August 26, 2021, and signed by the trial judge. The written order states:

"1. Defendant Urban Renewal's Motion to Vacate Civil Contempt Order is hereby denied. The denial of Urban Renewal's Motion to Vacate is based on this court finding that Urban Renewal did not complete the work that it agreed to in the contract and the work that it did complete was not in compliance with the City Building Code. Urban Renewal was provided with various opportunities to correct the work it was contracted to undertake at Ms. Bryan's property and yet failed to do so. For this reason Urban [R]enewal is ordered to return Ms. Bryan her funds.

2. The Court re-affirms its order of 7/15/21 for Urban Renewal to return Ms. Bryan her money in the amount of $73,888. The amount is to be paid in two installments: $36,944 is to be paid in 2 weeks (9/9/21) and $36,944 to be paid within 4 weeks (9/23/21).

3. This matter is continued for Case Management and hearing to October 7, 2021, at 11:00 a.m. That case management shall be a virtual hearing with Zoom on the Court's Zoom account."[2]

---

[1]Similarly, in its brief to this court, the City states: "The court notified the parties of its ruling in an email sent October 8, 2021, in which it described the order as one 'indicating the basis of the contempt.' "

[2]The City does not dispute the authenticity of either the email or the written order. In its brief, the City acknowledges that, although the order was dated earlier, it was entered on Tuesday, October 12, 2021. (The Tuesday after Friday, October 8, 2021, was October 12, 2021.)

¶ 13    As noted above, the notice of appeal for this appeal was filed by Urban Renewal on August 27, 2021.

¶ 14                                    ANALYSIS

¶ 15                                  I. Jurisdiction

¶ 16    An appellate court has an independent duty to consider whether or not it has jurisdiction over a case, even when the parties do not challenge its authority to hear the appeal. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67. "Our supreme court has stated that the ascertainment of a court's own jurisdiction is one of the 'most important tasks of an appellate court panel when beginning the review of a case.' " *A.M. Realty*, 2016 IL App (1st) 151087, ¶ 68 (quoting *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal")); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action.").

¶ 17    Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), permits the appeal of "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." As explained below, Rule 304(b) provides this court with jurisdiction (1) if the order entered by the trial court was a contempt order and (2) if the notice of appeal was timely filed. Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016).

¶ 18                         A. Timely Notice of Appeal

¶ 19    Rule 304(b) provides that "[t]he time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303." Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Rule 303(a)(1) provides that "[t]he notice of appeal must be

filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *A.M. Realty*, 2016 IL App (1st) 151087, ¶ 70 ("An appellate court's jurisdiction is dependent on the appellant's timely filing of a notice of appeal."). Rule 303 further provides that "[a] notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). The sentence describes exactly what happened in the case at bar. The trial court announced a decision. The notice of appeal was filed after the announcement of the decision but before entry of the order. Thus, the notice of appeal filed by Urban Renewal is "treated as filed on the date of and after the entry of the *** order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Since we treat the notice as filed on the same day as, but immediately after, the entry of the order, the notice was timely filed.[3]

¶ 20                                B. The Order At Issue

¶ 21        In the court below, the City would not agree to labeling the proposed order a "contempt" order, and the trial court did not label either of its written orders, which appear in our record, as "contempt orders." On July 15, 2021, the trial court issued a written order directing Urban Renewal "to refund Ms. Bryan $73,888—the amount she paid to him [*sic*] to complete the first (2) phases of a (5) phase project." However, the July 15 order did not state that it was a contempt order. Nonetheless, Urban Renewal filed a motion to vacate a contempt order, which the trial court orally denied on August 26. The trial court's second order, which

---

[3]The City concedes that Urban Renewal's notice was timely filed pursuant to this provision of Rule 303(a)(1).

is stamped August 26, and which forms the basis for this appeal, also did not state that it was a contempt order.

¶ 22         However, on this appeal, defendant argues that the second order was a contempt order, and the City now agrees that it was. In addition, the record provides some support for the parties' assertion that it was the court's intent to issue a contempt order. First, the record contains an e-mail from the trial judge stating that she was entering a written "order indicating the basis of the contempt." Second, the order was issued in response to the City's petition for rule to show cause why Urban Renewal "should not be held in indirect civil contempt" of court. Based on these facts, the disputed order was most likely intended to be a contempt order.  Since it was most likely entered as a contempt order and the notice was timely filed, we have jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) and Rule 304(b)(5) (eff. Mar. 8, 2016).

¶ 23                                II. Direct or Indirect

¶ 24         The next question is whether the contempt was direct or indirect. "Properly identifying whether a contempt charge is direct or indirect is critical because" the type indicates what procedural safeguards are required. *Windy City Limousine Co. v. Milazzo,* 2018 IL App (1st) 162827, ¶ 41.

¶ 25         Illinois law recognizes two types of contempt: direct and indirect. *People v. L.A.S.*, 111 Ill. 2d 539, 543 (1986). Direct contempt concerns contemptuous conduct that occurred in the very presence of the judge, while indirect contempt concerns contemptuous conduct that occurred in whole or in an essential part outside the presence of the court. *People v. Simac*, 161 Ill. 2d 297, 306 (1994); *L.A.S.*, 111 Ill. 2d at 543; see also *Windy City*, 2018 IL App (1st) 162827, ¶ 40.  In the case at bar, the trial court's order indicates that the alleged contemptuous

conduct occurred primarily outside the presence of the judge and, thus, would qualify as indirect contempt.

¶ 26        "[A] direct contempt charge may be resolved summarily without formal pleadings, notice, or a hearing, as the alleged conduct was witnessed firsthand by the judge." *Windy City,* 2018 IL App (1st) 162827, ¶ 41. "Conversely, when someone is charged with indirect contempt, regardless of whether it is civil or criminal, the alleged contemnor is entitled to certain due process protections, including notice and the opportunity to be heard." *Windy City,* 2018 IL App (1st) 162827, ¶ 41.

¶ 27                                    III. Civil or Criminal

¶ 28        Next, we must determine whether the contempt is civil or criminal. While a trial court may label the contempt as civil or criminal, it is the substance of the contempt finding, not the label given by the trial court, that governs whether a reviewing court considers the contempt criminal or civil on appeal. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 28; *SKS & Associates, Inc. v. Dart*, 2012 Il App (1st) 103504, ¶ 15.

¶ 29        In order to determine whether a contempt finding is civil or criminal in nature, it is important to consider " 'the purpose for which the contempt sanctions are imposed.' " *Emery v. Northeast Illinois Regional Transportation Co.*, 374 Ill. App. 3d 974, 977 (2007) (quoting *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 278 (2006). Civil contempt is " 'designed to compel future compliance with a court order. ' " *Emery*, 374 Ill. App. 3d at 977 (quoting *Sharp*, 369 Ill. App. 3d at 279). A person held in civil contempt must have the ability to purge the contempt by complying with the court order. *O'Malley*, 2016 IL App (1st) 151118, ¶ 26; *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 633 (1991).

¶ 30    In contrast, criminal contempt is instituted to punish, rather than to coerce. *O'Malley*, 2016 IL App (1st) 151118, ¶ 27; *Emery*, 374 Ill. App. 3d at 977; *Sharp*, 369 Ill. App. 3d at 279. Criminal sanctions are retrospective in that " 'they seek to punish a contemnor for past acts [that] he cannot now undo. ' " *Emery*, 374 Ill. App. 3d at 977 (quoting *In re Marriage of Betts*, 200 Ill. App. 3d 26,46 (1990)). " '[I]ndirect civil contempt is a continuation of the original cause of action, ' " while criminal contempt proceedings are separate and distinct and not part of the original case being tried. *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 509 (2007) (quoting *People v. Budzynski*, 333 Ill. App. 3d 433, 438 (2002)). In sum, "criminal contempt consists of punishing for doing what has been prohibited or not doing what has been ordered, while civil contempt is invoked to coerce what has been ordered." *O'Malley*, 2016 IL App (1st) 151118, ¶ 27.

¶ 31    In a case of indirect criminal contempt, this court found that an alleged contemnor was "entitled to similar constitutional protections and procedural rights that a criminal defendant is afforded." *O'Malley*, 2016 IL App (1st) 151118, ¶ 31; *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 27; see *Windy City*, 2018 IL App (1st) 162827, ¶ 46 (limiting *O'Malley* to indirect criminal contempt). We found that the failure to provide such constitutional or procedural guarantees in a case of indirect criminal contempt required this court to vacate the finding of indirect criminal contempt. *O'Malley*, 2016 IL App (1st) 151118, ¶¶ 31-32 (vacating an indirect criminal contempt finding due to the trial court's failure to provide such guarantees); *Luttrell v. Panozzo*, 252 Ill. App. 3d 597, 601 (1993). We found that the required constitutional protections included (1) the right to a jury trial when incarceration exceeds six months or the fine exceeds $500,[4] (2) the right to counsel, (3) the right to change of judge, (4) the right to be

_____

[4]In the case at bar, the amount was $73,888, which was well in excess of $500.

charged with a written complaint, petition or information, (5) the right to personal service and to know the nature of the charges, (6) the right to file an answer and have a public trial, (7) the right to present evidence and subpoena witnesses, (8) the right to the presumption of innocence and against self-incrimination, and (9) the right to be proven guilty beyond a reasonable doubt. *O'Malley*, 2016 IL App (1st) 151118, ¶ 31; *Budzynski*, 333 Ill. App. 3d at 439; see also *Windy City*, 2018 IL App (1st) 162827, ¶ 46 (listing these rights as applying to a case of indirect criminal contempt).

¶ 32       In the case at bar, the court did not set a purge as required for civil contempt; nor did the court comply with the procedural safeguards required for indirect criminal contempt, such as the right to a jury trial or the right to be charged. *O'Malley*, 2016 IL App (1st) 151118, ¶ 32 (contempt finding vacated where defendant was "not notified of a criminal contempt proceeding, was not admonished as to his rights, nor found guilty beyond a reasonable doubt"). Because the order is unclear as to whether criminal or civil contempt was intended, we must reverse and remand the matter for further proceedings.

¶ 33                                    CONCLUSION

¶ 34       We acknowledge and sympathize with the trial judge's frustration when faced with defendant's noncompliance with its orders. However, for a civil contempt order to be valid, it must have a purge provision, which was not present here. For a criminal contempt order to be valid, there must be a host of procedural safeguards, which also were not present here. For the foregoing reasons, we must vacate the order, stamped August 26, 2021, and remand for further proceedings consistent with this opinion. The trial court may enter the type of order that it finds appropriate, including contempt or summary judgment, so long as the order is clear and the applicable statutory requirements are met.

¶ 35        Vacated and remanded.

2022 IL App (1st) 211074

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-M1-400022; the Hon. Patrice Bell-Reid, Judge, presiding. |
| **Attorneys for Appellant:** | John H. Ray III, of Ray & Counsel, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |