# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.**, 2012 IL App (1st) 121183

---

| | |
|---|---|
| Appellate Court Caption | A.M. REALTY WESTERN L.L.C., Plaintiff-Appellant, v. MSMC REALTY, L.L.C., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-1183 |
| Filed | November 30, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff lessor had standing to collect from defendant-successor-lessee for improvements plaintiff agreed to complete, since the improvements were completed prior to the expiration of the lease and plaintiff's sale of the building, defendant's alleged obligation to pay plaintiff for the improvements matured before the sale of the premises, and it was a chose in action that did not transfer to the subsequent owners. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-009152; the Hon. Daniel J. Pierce, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Alex Pirogovsky and Aleksandra E. Fremderman, both of Pirogovsky Fremderman, Ltd., of Northbrook, for appellant.

Christopher Carmichael and Anna Z. Krasinski, both of Holland & Knight, LLP, of Chicago, for appellee.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.

Justices Hall and Garcia concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff A.M. Realty Western L.L.C. (AM Realty) sued a former tenant, defendant MSMC Realty, L.L.C. (MSMC), to collect monthly payments that the former tenant had agreed to pay, in addition to rent, for certain building improvements. Defendant moved to dismiss on the ground that plaintiff no longer had standing to collect under the prior lease because plaintiff had since sold the building. On November 17, 2011, the trial court granted defendant's motion and dismissed the complaint with prejudice. For the following reasons, we reverse.

¶ 2    BACKGROUND

¶ 3    On August 10, 2010, plaintiff filed a verified complaint, in which it alleged that SSM Regional Health Services (SSM), defendant's predecessor in interest, had signed a store lease on January 12, 2004, in which SSM agreed to rent commercial space from plaintiff.

¶ 4    The lease was attached to the complaint, and the lease stated that it was for the second floor of "12940 S. Western," in Blue Island, Illinois, and that the tenant, SSM, was a not-for-profit corporation that owned and operated St. Francis Hospital. The lease also stated that SSM's principal office was in Evanston, Illinois.

¶ 5    Section 3.02(a) of the lease provided, in relevant part, that:

"3.02(a) Landlord shall provide, at Tenant's expense:

(i) Heating, ventilation, and air conditioning equipment (HVAC) for the Premises ***

***

(iii) All improvements required in the leased space other than the bathrooms provided by Landlord shall be initially paid by Landlord upon occupancy of the Tenant and then billed back to the Tenant over a 5 year amortization schedule in addition to the rent (other than HVAC which shall be billed on a 15 year amortization schedule)[.]"

-2-

In its complaint, plaintiff alleged that it made improvements to the heating, ventilation and air conditioning (HVAC) equipment, and had complied with all its obligations under the lease.

¶ 6	Plaintiff alleged that, on July 8, 2008, with plaintiff's consent, SSM assigned its interest and obligations under the lease to defendant. A letter requesting the landlord's consent was attached to the complaint. The letter also states that an "Assignment of Landlord Leases" is attached to the letter, but this assignment was not included as an exhibit to the complaint.

¶ 7	Plaintiff alleged that defendant vacated the premises at the end of the lease term which, according to the lease, was on April 30, 2009. Plaintiff alleged that it sent on March 22, 2010, a final notice to defendant demanding $96,403.15 owed for improvements and that, in response, defendant had sent a payment for only $31,941.68. Defendant's payment excluded $64,461.47, which was the amount allegedly owed for HVAC improvements. Plaintiff alleged that on May 10, 2010, it mailed a letter to defendant demanding the $64,461.47 still allegedly owed under the lease and that, on May 21, 2010, it received a response stating that defendant had no intention of paying the remaining amount. Although the complaint states that defendant's May 21, 2010, letter is attached as "Exhibit C," it was not. As we explain later, plaintiff subsequently filed an amended complaint in order to attach this missing document.

¶ 8	Plaintiff's complaint, which was filed on August 10, 2010, alleged two counts: count I, for breach of contract; and count II, for anticipatory breach. Count I alleged that section 3.02 of the lease required defendant to pay $1,611.54 per month for the HVAC improvements, and that defendant failed to make the 17 payments due between April 2009 through August 2010, which totaled $27,396.18. Count II alleged that plaintiff had already stated that it had no intention of paying for the HVAC improvements and that, between the day the complaint was filed and April 2014, defendant would owe an additional $37,065.29. Thus, the complaint sought a total of $64,461.47, plus costs and other relief that may be just.

¶ 9	On October 27, 2010, plaintiff filed a motion for a default judgment which alleged that defendant had failed to file an appearance or other pleading. On November 8, 2010, the trial court ordered defendant to file its appearance, answer or otherwise plead within 30 days. On November 15, 2010, defendant filed an appearance; and on December 6, 2010, defendant filed a combined motion under section 2-615 and section 2-619 of the Code of Civil Procedure to dismiss with prejudice (735 ILCS 5/2-615, 2-619 (West 2010)).

¶ 10	In its motion, defendant sought to dismiss (1) pursuant to section 2-615 on the ground that the lease allegedly barred plaintiff's claims; and (2) pursuant to section 2-619 on the ground that plaintiff's claims arose prior to the assignment of the lease by SSM to defendant and that defendant had not assumed these claims.

¶ 11	In its motion, defendant acknowledged that plaintiff had entered into a five-year lease with SSM and that SSM later assigned this lease to defendant with plaintiff's consent. Defendant acknowledged that, upon assuming the lease and during the remaining term of the lease, defendant paid both the rent and the monthly payment for the HVAC improvements. However, defendant claimed that it was not obligated to pay the remaining cost of the HVAC improvements after the lease ended.

¶ 12    In the alternative, defendant argued that the HVAC improvements were made prior to the assignment and that defendant was liable only for those obligations which arose after the assignment.

¶ 13    Defendant attached as an exhibit to its motion a document entitled "Consent of Landlord to Assignment" (Consent), which appears to be signed by plaintiff landlord only. This Consent states that an "Assignment of Landlord Leases" is attached as "Exhibit A," but this "Exhibit A" is not included in the appellate record. The Consent states: "Landlord acknowledges that [defendant] MSMC will be liable for those obligations under the Lease arising from and after the Assignment becomes effective." The immediately preceding line was crossed out by pen and the deletion was initialed. The deleted line stated that the landlord agreed "to release SSM from all of the lease obligations on and effective after the date of the Assignment."

¶ 14    On February 28, 2011, the trial court granted, without prejudice, defendant's section 2-615 motion to dismiss count II, the anticipatory breach count. The trial court dismissed this count on the ground that, although the complaint stated that plaintiff had attached defendant's letter declaring defendant's intent not to pay, the letter was not actually attached to the complaint. Plaintiff was also granted 21 days to replead. The trial court also denied defendant's section 2-619 motion, finding that "a question of fact exists as to the obligations under the lease and assignment."

¶ 15    On March 10, 2011, plaintiff filed its amended verified complaint in order to attach as "Exhibit C" defendant's May 21, 2010, letter which stated: "MSMC does not owe and will not pay the $64,461.47 you are demanding."

¶ 16    On March 31, 2011, defendant filed its answer in which it admitted that plaintiff and SSM had entered into a commercial lease; that a copy of that lease was attached to plaintiff's complaint as "Exhibit A"; that plaintiff had made HVAC improvements to the leased premises; that the lease was later assigned to defendant; that "a true and correct copy of the assignment is attached as Exhibit B" to the complaint; that plaintiff sent a demand letter "on or around March 22, 2010[,] seeking $96,403.15"; that defendant then "made a payment to [p]laintiff of rent"; that plaintiff sent another demand letter "on or around May 10, 2010[,] seeking $64,461.47"; and that on May 21, 2010, defendant sent plaintiff a letter claiming that "under the terms of the Lease no further payments were owed."

¶ 17    In its answer, defendant also admitted that on "July 8, 2008, [defendant] MSMC assumed SSM's obligations under the Lease arising on or after the date of the assignment" and that it agreed to "make monthly rent payments, and make certain payments in addition to the rent." Defendant also admitted that "Section 3.02 [of the lease] requires, in addition to rent, certain payments for the HVAC improvements from the effective date of the assignment."

¶ 18    Defendant's answer also contained three affirmative defenses: (1) failure to mitigate damages; (2) a prior release or discharge contained in the assignment which released defendant from obligations arising prior to the assignment; and (3) a "no meeting of the minds/mistake" defense.

¶ 19    In plaintiff's answer to defendant's interrogatories, filed August 4, 2011, plaintiff stated that "[t]he property was sold and to the best of [p]laintiff's knowledge, is vacant."

¶ 20    On October 3, 2010, defendant filed a motion to dismiss for lack of standing. In its motion, defendant stated that, although plaintiff sought payments that it claims were due between April 2009 and April 2014, plaintiff sold the property on March 26, 2011, to the Board of Trustees of Community College District No. 524 (the community college). Defendant claimed that plaintiff had conveyed its entire interest in the property and thus had no standing to bring an action for breach of lease. Defendant also observed that plaintiff had specifically retained the right to collect amounts from another lessee, namely, Kaleidoscope, Inc., but did not do so with respect to defendant.

¶ 21    On October 3, the same day that defendant filed its dismissal motion, plaintiff produced the sale documents, in response to a document request by defendant. This production contained a "rent roll" which listed the tenants as of March 30, 2011. Since defendant was no longer a tenant, it was not listed. At the bottom of the current rent roll, someone had written by hand that "seller has retained the right to collect from Kaleidescope from the monthly [*sic*] through 12/7/11 the amount equal to 211,623.84 for tenant improvements."

¶ 22    The document production also contained a "Post-Closing Lease Assignment Agreement," which stated that plaintiff had assigned the Kaleidoscope lease to the community college. With respect to the assignment, the agreement stated:

"C. Pursuant to Section 3.02(a) of the Kaleidoscope Lease, AM Realty made certain tenant improvements to the Kaleidoscope space and Kaleidoscope has agreed to reimburse AM Realty for these expenses plus interest over a period of five (5) years to and including the end of calendar year 2011.

D. As part of the sale transaction of the Subject Property, AM Realty has assigned the Kaleidoscope Lease to the College.

E. However, the parties have determined that it is more efficient for AM Realty to reserve its right to payment under Section 3.02 with respect to these tenant improvements."

Thus, it was from the assignment of the lease that plaintiff reserved the right to collect amounts owed from tenant improvements. Since defendant was not a current tenant at the time of the sale, there was no assignment of defendant's lease and, hence, no need to reserve a right to prevent it from being assigned away.

¶ 23    Additional language in the "Post-Closing Lease Assignment Agreement" makes clear that the assignment was the reason for the reservation. The agreement provided that: "AM Realty's Assignment of the Kaleidoscope Lease to the College shall not include AM Realty's right to continue to receive tenant improvement payments due and owing AM Realty from Kaleidescope pursuant to Section 3.02 of the Kaleidoscope Lease."

¶ 24    In its response to defendant's motion, plaintiff argued that it had paid funds out of its own pocket to improve the property as defendant's predecessor had requested, pursuant to an agreement that plaintiff would be paid back. Plaintiff argued that the agreement was similar to a loan.

¶ 25    On November 17, 2011, the trial court issued a written order that stated in full:

"This matter coming to be heard on Defendant MSMC Realty, LLC's motion to

dismiss for lack of standing, counsel being present, and the court fully advised in the premises, it is hereby ordered:

"(1) MSMS Realty, LLC's motion is granted and this matter is dismissed with prejudice."

Although the order contains a "(1)," there was no "(2)." Other than the fact that the order states that counsel was present, there is no indication that the trial court heard oral argument or stated its reasons in open court. The appellate record does not contain either a transcript or a bystander's report for that day.

¶ 26    On December 19, 2011, plaintiff filed a motion to reconsider, in which it argued that plaintiff had standing to seek the entire amount of the HVAC improvements because this obligation had accrued prior to both the termination of the lease and the sale of the property. In the alternative, plaintiff argued that, at the very least, it had the right to collect the payments that were due prior to March 30, 2011, which was the date of the property sale.

¶ 27    Although the appellate record does not contain defendant's response to plaintiff's motion, the record does contain "plaintiff's reply to defendant's response to plaintiff's motion to reconsider." On March 23, 2012, the trial court denied plaintiff's motion in a written order that stated in full:

"This matter comes before the Court on Plaintiff's Motion to Reconsider its Order of November 17, 2011[,] which dismissed the Complaint for lack of standing. After due consideration of Plaintiff's Motion to Reconsider, Defendant MSMC Realty, LLC's Response to said Motion and Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reconsider and after review of the applicable caselaw regarding matters appropriately considered when dealing with motions to reconsider and after a review of the submissions giving rise to the November 17, 2011[,] order Plaintiff's Motion to Reconsider the Order of November 17, 2011[,] is DENIED."

The appellate record does not contain either a transcript or a bystander's report for March 23, 2012, the day that the order was issued.

¶ 28    Plaintiff's notice of appeal, filed on April 18, 2012, sought review of the March 23, 2012, order that denied plaintiff's motion for reconsideration and the November 17, 2011, order dismissing the complaint. This appeal followed.

¶ 29                                    ANALYSIS

¶ 30    The sole issue on this appeal is whether plaintiff has standing to sue.

¶ 31    Plaintiff argues that the trial court erred when it found that plaintiff lacked standing. First, plaintiff argues that its sale of the building did not extinguish its standing to sue for payment for the HVAC improvements to the building, since this obligation accrued before the building was sold. Second and in the alternative, plaintiff argues that, at the very least, it has the right to collect the monthly HVAC payments that defendant should have paid prior to the sale.

¶ 32    Defendant argues, first, that plaintiff's notice of appeal stated that plaintiff was appealing only one order, namely, the order denying the motion to reconsider, and thus this court is

without jurisdiction to consider the trial court's first order dismissing the complaint. Defendant's argument is factually incorrect. Plaintiff's notice of appeal states that it is appealing the trial court's "Orders," which is plural. The notice lists two orders, which we have numbered for the reader's convenience: "[1] the Final Order of the Circuit Court of Cook County entered by Judge Daniel J. Pierce, on March 23, 2012, denying [plaintiff] A.M. Realty Western L.L.C.'s Motion to Reconsider and Vacate Judgment granting [defendant] MSMC Realty, L.L.C.'s Motion to Dismiss the above-captioned matter and [2] Order Dismissing the Complaint entered therein." After listing these two orders, the notice states that plaintiff "will ask the Appellate Court *** to vacate the aforesaid Orders"–plural. Thus, we do not find defendant's first argument persuasive because it is factually incorrect.

¶ 33    Defendant's second argument is that we cannot consider plaintiff's argument in the alternative that, at the very least, plaintiff has standing to collect the monthly HVAC payments that should have been paid prior to the sale of the building. Defendant claims that we cannot consider this argument because plaintiff first made it in plaintiff's motion to reconsider. We find this argument unpersuasive because, first, plaintiff has always argued that it was entitled to all the payments, both those to be paid before and those to be paid after the sale. Second, since we find that plaintiff has standing to sue for all the payments, we need not address plaintiff's argument in the alternative.

¶ 34    Defendant's third and principal argument on appeal is that the building sale extinguished plaintiff's standing to sue for any of the HVAC payments. We discuss this argument in more depth below.

¶ 35    Defendant's fourth argument is an argument on the merits. However, since the trial court made no ruling on the merits and we find that plaintiff has standing to sue, we remand to the trial court for further proceedings on the merits.

¶ 36                                I. Standard of Review

¶ 37    The standard of review for an order denying a motion to dismiss under section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)) is *de novo*. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). *De novo* consideration means the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "In ruling on such a motion, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Melena*, 219 Ill. 2d at 141 (citing *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004)).

¶ 38    The determination of whether to grant a motion for reconsideration rests within the trial court's discretion and is subject to reversal only upon an abuse of discretion. *Farley Metals, Inc. v. Barber Colman Co.*, 269 Ill. App. 3d 104, 116 (1994). "The purpose of a motion for reconsideration is to apprise the trial court of newly discovered evidence, a change in the law, or errors in the court's earlier application of the law." *Farley Metals, Inc.*, 269 Ill. App. 3d at 116. "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)).

¶ 39                                    II. Standing

¶ 40      Plaintiff filed this appeal claiming that the trial court erred when it dismissed plaintiff's complaint for lack of standing. Plaintiff argues that the sale of the building did not extinguish plaintiff's standing to bring the instant case because the payments in the lease were akin to a loan, which became due before the property was sold and were not assigned to the new owners.

¶ 41      Defendant argues that plaintiff does not have standing to sue for the remaining HVAC payments because any leases and any rights under those leases were conveyed along with the land. Defendant argues that the lease in the instant case was not a loan. Since the improvements stayed with the property when it was sold, and the rights in the property were unreserved, defendant argues that the improvements transferred to the new owner.

¶ 42      The parties cited the following cases as the controlling precedent on the issues before us. We conducted our own independent research to locate more recent cases and found that the cited cases were indeed the most relevant.

¶ 43      We find that plaintiff has standing to sue because, if there is a debt as plaintiff claims in its complaint, it matured before the property was sold. In *Metropolitan Trust Co. v. Fishman*, 323 Ill. App. 413, 419 (1944), the appellate court found that a lease agreement belongs to a class of "divisible" contracts. In that case, the appellate court held that the former landlord was entitled to collect unpaid rent that was owed prior to the cancellation of the lease agreement. *Metropolitan Trust Co.*, 323 Ill. App. at 420. The appellate court explained that a divisible contract is one contract and not several, and that " 'on performance on one side of each of its successive divisions, the other party becomes indebted for the agreed price of the division which is recoverable in spite of subsequent breach by the performing party.' " *Metropolitan Trust Co.*, 323 Ill. App. at 419 (quoting 3 Williston on Contracts § 861, at 2415-16 (rev. ed.)). The appellate court held that, since the landlord's obligations under the lease had been fully performed, the tenant was liable for unpaid rent for his occupation of the property prior to his eviction. *Metropolitan Trust Co.*, 323 Ill. App. at 419-20.

¶ 44      Like *Metropolitan Trust*, the lease agreement in the instant case is divisible into separate performances. Plaintiff alleges that defendant's predecessor agreed that certain improvements to the property would be paid over a 15-year amortization schedule, in addition to the rent payments due during the 5-year term of the lease. Defendant then assumed its predecessor's obligations when it was assigned the lease. Plaintiff alleges that it fully performed its HVAC obligation under the lease when it improved the HVAC units on the property. If plaintiff fully performed this requirement as it alleges, then the alleged debt to repay for these improvements had matured prior to the sale of the property. Our holding is similar to the holding in *Metropolitan Trust*, where the tenant's rent debt had matured because the landlord had fully performed prior to the cancellation of the lease.

¶ 45      Since defendant's debt had allegedly matured, it did not pass on to the subsequent owners of the property. The appellate court in *Dasenbrock v. Interstate Restaurant Corp.*, 7 Ill. App. 3d 295 (1972), held that the previous owners of a building had standing to sue for past rent that had become due and owing prior to the date the building was sold. The appellate court in that case relied on the principle of law set forth in *Scully v. People*, 104 Ill. 349, 351

(1882), which held that rent arrear is a chose in action and is not assigned to the new owners of the property. Following the rule in *Scully*, the debt alleged in the instant case is a chose in action because it had matured prior to the sale of the property, and it did not transfer to the new owners. It follows that plaintiff has standing to sue for repayment of this alleged debt, as the appellate court held in *Dasenbrock*.

¶ 46    Defendant's argument is that plaintiff does not have standing to sue because the payments became due after the property was sold. Defendant's principal case is *Pros Corporate Management Services, Inc. v. Ashley S. Rose, Ltd.*, 228 Ill. App. 3d 573, 580 (1992), which held that any leases and any rights under those leases are conveyed along with the land. Defendant argues that the lease in the instant case was not a loan. Defendant argues that since the improvements stayed with the property when it was sold, and the rights in the property were unreserved, the improvements transferred to the new owner.

¶ 47    Defendant's argument is unpersuasive because the five-year lease period had ended prior to the sale of the building. Since the lease had ended, it was not assigned to the subsequent owners of the property. *Pros Corporate* is not controlling because it concerns future unaccrued rents in the assignment of an existing lease. In the case at bar, there was no existing lease, and hence no assignment of it.

¶ 48    Defendant also cites *Lipschultz v. Robertson*, 407 Ill. 470, 474 (1950), to argue that the unpaid amounts had not become due, and that amounts that had not yet matured were likewise passed along to the new owner. In addition, defendant argues that *Scully* and *Dasenbrock* are distinguishable from the instant case because those cases dealt with past rent payments that had already matured. In *Scully*, the appellate court held that future rent that will become due under the lease passes along with the land to its new owner. *Scully*, 104 Ill. at 351. That principle of law was followed in *Dasenbrock*, where the court held that rent accruing after the sale of the property was awarded to the new owners. *Dasenbrock*, 7 Ill. App. 3d at 298. Therefore, defendants argue, plaintiff does not have standing to sue for payments under the lease because plaintiff no longer has any interest in the property regarding rents that became due after the sale.

¶ 49    This argument is unpersuasive because defendant's alleged obligation to pay had accrued prior to the end of the lease. Defendant assumed its predecessor's responsibilities under the lease, including the alleged promise to pay for HVAC improvements over a 15-year period. The obligation to pay rent was a divisible promise for performance that was not assigned to the new owners because the lease had ended and defendant had vacated the building. However, plaintiff alleges that its promise to improve HVAC units on the property was fully performed by plaintiff prior to the building's sale. If so, then defendant's alleged debt to repay plaintiff for the improvements had matured and did not transfer with the property to the subsequent owners after the end of lease.

¶ 50    Additionally, *Lipschultz* is not controlling in the instant case because it involves future rent payments in the assignment of an existing lease. Defendant's attempt to distinguish *Scully* and *Dasenbrock* is likewise unpersuasive because defendant points to similar findings concerning the right to collect future rent. We agree with plaintiff's interpretation of *Scully* and *Dasenbrock* that the relevant principle of law is that rent that accrues prior to the

termination of the lease is a chose in action and is not assigned to future owners of the property.

¶ 51                                          CONCLUSION

¶ 52        Based on the foregoing reasons, we reverse the trial court's order granting defendant's motion to dismiss. We find that the trial court erred when it held that the sale of the property extinguished plaintiff's standing to sue for the HVAC payments under the lease. Our holding is limited to the issue of standing. We reverse the trial court's orders and remand the case for further proceedings on the merits.

¶ 53        Reversed and remanded.