IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 19, 2025 Session

FILED
04/16/2026
Clerk of the
Appellate Courts

# STANLEY H. TREZEVANT ET AL. v. COLLIERVILLE AUTO CENTER, INC.

**Appeal from the Circuit Court for Shelby County**
**No. CT-2853-19     Cedrick D. Wooten, Judge**

_____

**No. W2024-01907-COA-R3-CV**

_____

At the conclusion of proof in a bench trial in a breach of lease action, the trial court dismissed the plaintiffs' claims on the basis that both plaintiffs lacked standing. We affirm the trial court's ruling that the individual plaintiff's lack of standing rendered his claim moot but vacate the trial court's decision regarding the plaintiff company.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded.**

J. STEVEN STAFFORD, P.J., W.S. delivered the opinion of the court, in which W. NEAL MCBRAYER, and CARMA DENNIS MCGEE, JJ., joined.

Donald Capparella and Tyler Chance Yarbro, Nashville, Tennessee, for the appellants, American Sign Company, LLC, and Stanley H. Trezevant, III.

G. Coble Caperton and Warren P. Campbell, Memphis, Tennessee, for the appellee, Collierville Auto Center, Inc.

**MEMORANDUM OPINION[1]**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case began on June 28, 2019, when Plaintiffs/Appellants Stanley H. Trezevant and American Sign Company (together, "Appellants") filed a complaint to collect past due rents against Defendant/Appellee Collierville Auto Center, Inc. ("Appellee") in the Shelby County Circuit Court ("the trial court"). The complaint alleged that the parties had entered into a contract in August 2015, whereby Appellee would lease commercial property in Collierville, Tennessee ("the Property") for a term of five years. The complaint alleged that the Property was owned by Mr. Trezevant and that Appellee was to pay a base rent of $900,000.00 payable in sixty equal monthly installments of $15,000.00, plus an additional $2,000.00 per month for use of the rear lot. The complaint further alleged that Appellee surrendered the property on or about June 3, 2019, but that it was in default at that time and the total amount due on the contract, excluding attorney's fees, totaled $717,925.58. Attached to the complaint was a lease agreement naming Mr. Trezevant, American Sign Company, and Appellee as parties. The lease directed Appellee to divide its lease payments by paying American Sign Company $10,000.00 per month and paying Mr. Trezevant $5,000.00 per month. The lease also contained, inter alia, an attorney's free provision.

Appellee filed an answer on August 29, 2019, denying that Appellants were entitled to damages. Therein, Appellee stated that it could not admit nor deny whether Mr. Trezevant was the owner of the property, as it had been awarded to Mr. Trezevant's wife, Kisha Dean Trezevant, by the trial court in their pending divorce ("the divorce court"). Appellee also denied that it had entered into a lease agreement with Appellants as lessors.

On October 1, 2020, Appellee filed a countercomplaint for damages against Mr. Trezevant. The counter-complaint raised claims of fraudulent misrepresentation, abuse of process, conversion, and breach of contract. In its countercomplaint, Appellee argued that the lease relied on in Appellants' complaint was fraudulent and that the parties' relationship was governed by an earlier lease to which American Sign Company was not a party. Appellants then filed a motion to strike the countercomplaint, which was eventually granted.

Trial was eventually set for September 23, 2021. On August 27, 2021, Appellee filed a motion to stay the proceedings or to continue the trial on the basis that the final decree in Mr. Trezevant's divorce, which awarded the Property to Mr. Trezevant's wife, could be subject to an appeal. The motion further stated that Appellee "contends that Mr. Trezevant has no authority to pursue back rent on property he doesn't own and will have no rights to[.] Mrs. Trezevant appears to be the real party in interest and she has not even been consulted during the pendency of this suit." Thus, Appellee asserted that "this case should be stayed until the true owner of the [P]roperty and the proper party in interest is determined." The parties thereafter agreed to continue the case until February 2, 2022.

On January 7, 2022, however, Appellee filed a motion to dismiss for lack of standing. Therein, Appellee reasserted that because Mr. Trezevant no longer owned the Property, he had no standing to pursue back rents under the lease and that Mrs. Trezevant was the real party in interest. To its motion, Appellee attached the January 5, 2021 divorce decree ("the divorce decree") entered by the divorce court.[2] Based thereon, Appellee argued that Mrs. Trezevant was awarded not only the Property, but also the lawsuit, as the divorce court declined to value any lawsuits "separate and apart from the real property or businesses to which they might relate." Moreover, the divorce court ordered that "[w]ith regard to the real property received by each party, they shall also receive any and all debts, business interests, and bank accounts that go with that property." Appellee further noted that American Sign Company was not a party in interest because it held no ownership interest in the Property and the divorce court held that there was no "corporate separateness" between Mr. Trezevant and his businesses, including American Sign Company. Appellee also asserted that the parties' relationship was actually governed by a different lease that American Sign Company was not a party to and that the lease cited in the complaint was fraudulent. So Appellee asked that the case be dismissed for lack of standing.

Appellants responded to the motion to dismiss on March 2, 2022. Therein, Appellants asserted that the lawsuit was not assigned to Mrs. Trezevant in the divorce decree and that she has made no effort to pursue it. Appellants further asserted that American Sign Company could enforce the lease because it was a party thereto and was entitled to receive lease payments thereunder. Appellants also asserted that the lease they cited in their complaint was the proper lease, evidenced by the parties' course of performance, which showed that Appellee paid lease payments to American Sign Company and paid property taxes, neither of which would have been required under the lease proffered by Appellee. The trial court eventually denied the motion to dismiss.

Trial occurred on August 14, 2024; Mr. Trezevant was the only witness. At trial, the parties did not dispute that Appellee vacated the property in June 2019, prior to the entry of the divorce court's January 2021 divorce decree.[3] Mr. Trezevant therefore asserted that he was owed unpaid rents for Appellee's use and possession of the property prior to June 2019. Mr. Trezevant also testified that it was his understanding that despite the divorce decree, he was still the record owner of the Property, receiving official correspondence for the Property, paying the taxes on the Property, and maintaining the Property. Mr. Trezevant

_____

[2] The divorce decree was the second one entered by the divorce court, after this Court vacated portions of the first order and remanded the case back to the divorce court. *See generally* **Trezevant v. Trezevant**, 568 S.W.3d 595 (Tenn. Ct. App. 2018) (involving a March 2017 divorce decree). A different judge presided over the matter on remand. The second divorce decree was eventually affirmed in full by this Court. *See* **Trezevant v. Trezevant**, No. W2021-01153-COA-R3-CV, 2024 WL 352896, at *1 (Tenn. Ct. App. Jan. 31, 2024), *perm. app. denied* (Tenn. June 21, 2024).

[3] The parties disputed whether Appellee voluntarily vacated the property or was locked out by Mr. Trezevant.

further testified that American Sign Company at no time held any ownership interest in the Property.

At the close of proof, Appellee moved for a directed verdict, which the trial court granted. In the November 22, 2024 order that followed, the trial court explained that the divorce decree awarded both the Property and any lawsuits related to the Property, to Mrs. Trezevant. As the divorce decree was now final, the trial court ruled that Mr. Trezevant "does not own" the Property and therefore lacked standing to prosecute a claim related to the Property. The trial court further ruled that American Sign Company "had no right to bring this action." The trial court therefore dismissed the case. From this order, Appellants now appeal.

## II. ISSUE PRESENTED

Appellants raise a single issue in this case: whether the trial court erred in dismissing their claim for breach of contract on the basis that neither Mr. Trezevant nor American Sign Company had standing?

## III. STANDARD OF REVIEW

In this case, the parties and the trial court characterize the trial court's decision as having granted Appellee's motion for directed verdict at the close of Appellants' proof. But motions for directed verdict "have no place in bench trials[.]" ***Burton v. Warren Farmers Co-op.***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). Instead, the proper motion under these circumstances is a motion for involuntary dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure. A motion for involuntary dismissal challenges the sufficiency of the plaintiff's evidence. "A claim may be dismissed pursuant to a Tenn. R. Civ. P. 41.02(2) motion to dismiss if, based on the law and the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking." ***Id.*** (citing ***City of Columbia v. C.F.W. Const. Co.***, 557 S.W.2d 734, 740 (Tenn. 1977)). As this Court has explained,

> Motions under Tenn. R. Civ. P. 41.02(2) require less certainty than motions for directed verdict. ***Smith v. Inman Realty Co.***, 846 S.W.2d at 822. Thus, a court faced with a Tenn. R. Civ. P. 41.02(2) motion need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence. ***Thompson v. Adcox***, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001).

***Burton***, 129 S.W.3d at 520–21.

"The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure." ***Bldg.***

- 4 -

*Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). Under Rule 13(d), we review the trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed de novo with no presumption of correctness. *Bldg. Materials*, 211 S.W.3d at 711.

## IV. ANALYSIS

The central issue in this case involves justiciability, particularly standing and mootness. Courts are empowered to decide only justiciable issues. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). "To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency." *Id.* (citing *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203–04 (Tenn. 2009)). One facet of justiciability is standing. As the Tennessee Supreme Court has explained,

> Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action. *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). The proper focus of a determination of standing is a party's right to bring a cause of action, and the likelihood of success on the merits does not factor into such an inquiry. *Darnell*, 195 S.W.3d at 620; *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767–68 (Tenn. Ct. App. 2002). Every standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984).

*Hargett*, 414 S.W.3d at 97. Constitutional standing, the kind at issue in this case, has three essential elements: (1) "a party must show an injury that is 'distinct and palpable'; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard"; (2) "a party must demonstrate a causal connection between the alleged injury and the challenged conduct"; and (3) "the injury must be capable of being redressed by a favorable decision of the court." *Id.* at 98. In sum, then, the standing doctrine ensures that the plaintiff "has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial resolution of the dispute." *City of Brentwood v. Metro Bd. of Zoning Appeals*, 149 S.W.3d 49, 55–56 (Tenn. Ct. App. 2004) (citing *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000)). As a result, "[p]ersons whose rights or interests have not been affected have no standing and are, therefore, not entitled to judicial relief." *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 755 (Tenn. 2015).

Appellants contend that the sole focus of the standing inquiry in this case should be on the facts as they existed at the time the complaint was filed. Indeed, this Court has stated that "standing is determined as of the date of the filing of the complaint[.]" *LaFollette Med. Ctr. v. City of LaFollette*, 115 S.W.3d 500, 504 (Tenn. Ct. App. 2003); *see also Norma Faye Pyles Lynch Fam. Purpose LLC*, 301 S.W.3d at 204 ("[T]he doctrines of standing and ripeness focus on the suit's birth[.]"). But this Court has more recently recognized that a party can in fact lose standing during the pendency of a case, causing the controversy to become moot. *See Ditto v. City of Chattanooga*, No. E2023-01185-COA-R3-CV, 2024 WL 4002560, at *4 (Tenn. Ct. App. Aug. 30, 2024) ("If a party loses standing, the case or issues within the case may become moot."); *Whalum v. Shelby Cnty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *7 (Tenn. Ct. App. Sept. 30, 2014) (holding that "a party must have continued standing throughout the pendency of an action to avoid invocation of the mootness doctrine") (quoting 1A C.J.S. *Actions* § 76 (2014)); *see also Hargett*, 414 S.W.3d at 96 (noting that justiciability must continue for the life of the case). Thus, the doctrines of standing and mootness can become intertwined:

> The issues of standing and mootness are related concepts to be used in analyzing the basic question of whether an adversary contest before the court is such that the court, in rendering a decision, will not be giving a merely advisory opinion. "Standing" focuses on parties and requires that each party possess an interest in the outcome of litigation, while "mootness" applies more to issues involved and, as a general rule, requires that opinions not be given concerning issues which are no longer in existence because of changes in factual circumstances.
>
> "Standing" to sue means that an individual has a sufficient personal stake in the controversy to obtain judicial resolution, while "mootness" is the doctrine of standing set in a time frame: **the requisite personal interest, or standing, that existed at the commencement of the litigation must continue throughout its existence in order for the litigation not to become moot**. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.

*Lovett v. Lynch*, No. M2016-00680-COA-R3-CV, 2016 WL 7166407, at *6 (Tenn. Ct. App. Dec. 8, 2016) (emphasis added) (quoting *Whalum*, 2014 WL 4919601, at *6–7).

A recent case, *Ditto v. City of Chattanooga*, applied this rule. In *Ditto*, the plaintiff purchased property at a tax sale and then sued the City of Chattanooga to prevent its condemnation. No. E2023-01185-COA-R3-CV, 2024 WL 4002560, at *1 (Tenn. Ct. App. Aug. 30, 2024). The trial court denied relief, and the plaintiff appealed. *Id.* at *3. But during the pendency of the appeal, the plaintiff sold the property to a third party. *Id.* at *3. We ultimately dismissed the appeal after concluding that the plaintiff "no longer has any legal interest in the Property that is the subject of this litigation[.]" *Id.* at *5. As we explained, "even if we were to determine that the trial court erred in allowing the demolition to go

forward, [the plaintiff] is no longer entitled to anything having to do with the Property and our ruling would not affect him in the slightest." *Id.* Without a personal right to vindicate, the plaintiff lacked standing in that there was no injury to him or relief that the court was empowered to give him. *Id.*

In this case, there is no dispute that by the time of the bench trial at least, Mr. Trezevant no longer owned the Property, as it was awarded to Mrs. Trezevant during the divorce. Mr. Trezevant argues, however, that the same result is not required here because his claim is not a property-based claim, but a contract-based claim and there can be no dispute that he was a party to the lease at issue. He therefore asserts that "a landlord's claim for back rent is not extinguished or mooted when the subject property is sold when the claim accrued before the transfer of that property."

We do not disagree that a claim to back rent is not necessarily transferred to a new owner along with a property upon sale. *See, e.g.*, *A.M. Realty W. L.L.C. v. MSMC REALTY, L.L.C.*, 2012 IL App (1st) 121183, ¶ 46, 981 N.E.2d 1082, 1090 (holding that former owner had standing to sue for lease payments because the lease period ended prior to the sale of the property and the lease therefore was not assigned to the subsequent owner). But a sale of the Property is not what occurred in this case. Rather, in this case, the Property, a marital asset, was awarded to Mrs. Trezevant in their divorce. In order to resolve this issue, it is therefore necessary to consider what was ordered by the divorce court.

As this Court has explained,

> The general rule is that a judgment should be so construed as to give effect to every part of it and where there are two possible interpretations that one will be adopted which is in harmony with the entire record, and is such as ought to have been rendered and is such as is within the jurisdictional power of the court. Moreover, the judgment will be read in the light of the pleadings and the other parts of the record . . . ."

*Copenhagen v. Copenhagen*, No. M2002-00217-COA-R3-CV, 2003 WL 261918, at *4 (Tenn. Ct. App. Feb. 6, 2003) (quoting *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983)). In addition, "[c]ourt orders and judgments, like other documents, often speak as clearly through implication as they do through express statements. Accordingly, when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated." *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) (citations omitted).

Turning to the divorce decree, we note that Mrs. Trezevant was not only awarded the Property, but also "any and all debts, business interests, and bank accounts that go with that property." And the divorce decree stated that pending lawsuits would not be awarded

- 7 -

as assets "separate and apart from the real property or businesses to which they might relate." The clear implication of this order is that all assets, interests, accounts, and lawsuits related to any property would be awarded along with the property to which each was associated. Obviously, both the lease at issue and this lawsuit are associated with the Property that was awarded to Mrs. Trezevant. It therefore appears beyond any doubt that the divorce court intended to award Mrs. Trezevant not only the Property, but also the lease and this pending lawsuit. Indeed, even Mr. Trezevant appears to concede in his brief that the divorce court "assigned the Lease Dispute to her in the nature of a chose in action." *See* ***Can Do, Inc. Pension & Profit Sharing Plan & Successor Plans v. Manier, Herod, Hollabaugh & Smith***, 922 S.W.2d 865, 866–67 (Tenn. 1996) (citing *Black's Law Dictionary* 241 (6th ed. 1990)) (describing a common law "chose in action" as "a right of proceeding in a court of law to procure payment of a sum of money or to recover a debt" and noting that a "any contract-based chose in action, except those involving matters purely personal in nature, is assignable"). So then, it appears that Mr. Trezevant concedes that the divorce court intended to transfer not only the Property to Mrs. Trezevant, but also the right to recover under the lease.

Thus, it appears that any interest that Mr. Trezevant had in the Property, the lease, and the lawsuit were all transferred to Mrs. Trezevant upon the finalization of the parties' divorce. Any right to recover back rents from Appellee under the lease was therefore placed with Mrs. Trezevant. As a result, Mr. Trezevant has no currently existing right to recover under the lease, and he lacks "the requisite personal interest" such that a favorable ruling from the trial court would be of any benefit to him personally. ***Lovett***, 2016 WL 7166407, at *6. In other words, even if Appellee was found to have violated the lease and owed back payments thereunder, such a ruling would not benefit Mr. Trezevant personally, as he has no interest in the Property, the lease, or the lawsuit from which he could base his recovery. As a result, he has lost standing in this case, and his claim is now moot.

Mr. Trezevant asserts, however, that the divorce court's ruling did not effectuate the transfer of the Property because Mrs. Trezevant never took the action required by the divorce court to transfer record ownership to herself. In particular, the divorce court ruled that "[t]he party receiving the property shall be responsible for the preparation of any and all deeds or other processes necessary to effectuate the transfer of said property, business and/or bank account." But Mr. Trezevant cites no authority to support his argument that the divorce decree was ineffective to divest him of his interest in the Property for purposes of this case simply because Mrs. Trezevant did not comply with the divorce court's directives. *See* ***Sneed v. Bd. of Pro. Resp. of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her . . . ."). Instead, it appears that the proper remedy for Mrs. Trezevant's alleged inaction may be to initiate contempt proceedings in the divorce court. *Cf.* ***Hill Boren Props. v. Ricky Lee Boren***, No. W2025-00675-COA-R3-CV, 2026 WL 942511, at *1 (Tenn. Ct. App. Apr. 8, 2026) (involving a threat to hold a party in contempt for failing to execute deeds as required by a settlement agreement (citing Tenn. R. Civ. P.

70)).[4] As a result, we conclude that the trial court did not err in ruling that Mr. Trezevant lacked standing to prosecute this action on his own behalf and that his claim should be dismissed.

Of course, the analysis that is applicable to Mr. Trezevant's claim is not necessarily applicable to the claim of American Sign Company. Indeed, there can be no dispute that Mrs. Trezevant was not awarded American Sign Company in the divorce decree. On appeal, Appellee asserts that American Sign Company cannot sue to enforce a lease for property that it does not own, citing *Edwards v. McCall*, 10 Tenn. App. 276, 280 (1929) ("A rental contract, to be binding, must be mutually binding. The person leasing the property to another for a stated term, must be authorized to make the lease, and it must be such a lease as would entitle the lessee under the lease contract to the use and occupancy of the leased premises."). In that case, however, the dispute involved whether the administrator of an estate could "encumber[] [] property by a lease so as to defeat the rights of the heirs at law of the deceased to immediate possession[.]" *Id.* In this case, there is no question that Mr. Trezevant was the owner of the Property at the time the lease was executed and therefore could enter into a lease concerning the Property. Nor is there any dispute that the lease cited in Appellants' complaint clearly provided that American Sign Company was entitled to a significant portion of the lease payments thereunder.[5] As such, we fail to see how *Edwards v. McCall* is controlling.

Certainly, Mr. Trezevant's right to recover under the lease was transferred to Mrs. Trezevant, but that does not necessarily mean that American Sign Company's right to

---

[4] Rule 70 provides as follows:

A decree for specific performance shall, if so ordered by the court, operate as a deed to convey land located in this state, or, in appropriate cases, other property, without any conveyance being executed by the vendor. In the case of land a copy of such decree certified by the clerk shall be recorded in the register's office in the county where the land lies and shall stand in the place of a deed. In all other cases where a judgment or decree directs a party to execute a conveyance of land or other property or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified (or within a reasonable time if no time is specified), the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. The court may also in proper cases adjudge the party in contempt. In lieu of directing a conveyance of land or personal property, the court may enter a decree divesting the title of any party and vesting it in others, and such decree has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or possession upon application to the clerk.

Tenn. R. Civ. P. 70. Mr. Trezevant was asked during trial if Mrs. Trezevant filed the divorce decree with the Registrar's office, to which he replied that he did not know, but that he currently owns the Property.
    [5] Appellee does not argue for purposes of this appeal that the parties' contractual relationship was governed by the other lease cited in its countercomplaint.

- 9 -

recover was also transferred. As Appellants point out in their brief, a right to recover under a contract may be authorized by assignment or under agency principles. To the extent that Appellee asserts that American Sign Company could not be a party to the lease because it did not have an ownership interest in the Property, Tennessee law also provides that non-parties may be beneficiaries under a contract with the right to sue in their own name when certain conditions are met. *See generally, e.g.*, **Abraham v. Knoxville Fam. Television, Inc.**, 757 S.W.2d 8, 11 (Tenn. Ct. App. 1988) ("In Tennessee the doctrine is firmly established that the beneficiary, though not a party to the contract, may maintain an action directly in his own name against the promisor, where such promise between the promisor and the promisee is made upon sufficient consideration for the benefit of the third party." (quoting **Willard v. Claborn**, 220 Tenn. 501, 505, 419 S.W.2d 168, 169 (1967))). But the trial court's order states nothing more concerning American Sign Company than that American Sign Company "had no right to bring this action."

Rule 41.02 provides that when a trial court grants a motion for involuntary dismissal "the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment." *See also* Tenn. R. Civ. P. 52.01 (requiring that trial courts make findings of fact and conclusion of law in bench trials but noting that findings are not requiring in adjudicating motions "except as provided in Rules 41.02 and 65.04(6)"). Indeed, the Tennessee Supreme Court has described the trial court's role in evaluating a motion for involuntary dismissal as requiring the trial court to "impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." **Bldg. Materials**, 211 S.W.3d at 711.

Unfortunately, it is difficult to discern on what basis the trial court actually granted the involuntary dismissal on American Sign Company's claim. Certainly, the only reasoning contained in the trial court's order concerns the subsequent award of the Property to Mrs. Trezevant by the divorce court. But American Sign Company was not awarded to Mrs. Trezevant in the divorce. And the trial court's decision suggests a conclusion that American Sign Company lacked standing even at the outset of this case. But without sufficient findings of fact and conclusions of law, we are unable to evaluate the trial court's decision. *See* **In re Est. of Oakley**, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (noting that the rationale for requiring findings of fact and conclusions of law is "that it facilitates appellate review by 'affording a reviewing court a clear understanding of the basis of a trial court's decision,'" and "[i]n the absence of findings of fact and conclusions of law, 'this court is left to wonder on what basis the court reached its ultimate decision.'" (quoting **Lovlace v. Copley**, 418 S.W.3d 1, 35 (Tenn. 2013))). A trial court's ruling, however, "must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." **Gooding v. Gooding**, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting **In re Est. of Oakley**, 2015 WL 572747, at *11). In this case, it is unclear how the trial court reached its decision concerning the claim by American Sign Company. We therefore vacate the dismissal of American Sign Company's claim and

remand for reconsideration of whether American Sign Company has standing to maintain this action and for the entry of an order that fully complies with Rule 41.02.[6]

### V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellants Stanley H. Trezevant and American Sign Company, and one-half to Appellee Collierville Auto Center, Inc., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[6] The trial court may consider new evidence and arguments in its discretion.